THE STATE v. DEGONIA, *Appellant.*

1.  **Practice** : JURY : CHALLENGE TO THE ARRAY.   In the absence of evidence of bias or prejudice on the part of the sheriff, it is no ground for a challenge to the array, that after the court had quashed the return upon a former *venire,* because the officer who had executed it had not first taken the oath of impartiality required by statute, he had served a second *venire* by summoning as jurors the same persons who had been summoned before.   HENRY, J., and SHERWOOD, C. J., dissenting.

2.  **Peremptory Challenges.**   In criminal cases the State must announce her peremptory challenges before the defendant can be compelled to make his.   (Following *State v. Steeley,* 65 Mo. 218.)

3.  **The Evidence** in this case authorized an instruction in relation to murder in the first degree.

4.  **Instructions** not based on any evidence given in the case, are properly refused.

69   485
59a  501
69   485
136  200

5. **Verdict.** The fact that the officer having a jury in charge furnished the jurors with cigars, is no ground for setting aside the verdict; neither is the fact that during a recess of the court a stranger was in the room where the jury was kept by the sheriff, it appearing that nothing whatever was said about the cause on trial.

6. **Improper Remarks by the Prosecuting Attorney,** at the trial, will not authorize a reversal of the judgment, unless the attention of the trial court was called to them by the motion for new trial, especially where the record shows that as soon as they were uttered the court rebuked the attorney, and commanded him to keep within the record.

*Appeal from Washington Circuit Court.*—Hon. L. F. Dinning, Judge.

*A. J. P. Garesche* and *G. I. Van Alen* for appellant.

*J. L. Smith,* Attorney-General, for the State.

Norton, J.—The defendant was indicted at the October term, 1877, of the circuit court of Washington county, for murder in the first degree, in killing Jules Polite. He was put upon his trial at the October term, 1878, of said court, and found guilty of the crime as charged, and sentenced to be hanged. From this judgment defendant has appealed, and seeks a reversal thereof, on the alleged errors of the circuit court in refusing to discharge, on defendant's motion, the panel of jurors summoned in the cause, and in giving and refusing instructions.

The record before us shows that on the 14th day of October, 1878, the sheriff returned into court a panel of forty jurors, from which to select a jury of twelve to try the cause, which jurors were sworn to answer questions touching their qualifications, and were found qualified by the court, and a copy of said panel furnished the defendant; that, on the following day, defendant filed his motion, accompanied by affidavits, challenging the array of said jurors, for the reason that they had been summoned and brought into court by persons who were neither sheriff's deputies nor sworn officers.

1. PRACTICE: jury: challenge to the array.

This motion was sustained for the reasons assigned therein, and an order entered discharging the jury. Thereupon the court ordered a *venire* for forty men, to serve as jurors on the trial, which the sheriff executed by summoning the same forty men whose discharge had been ordered. The defendant, thereupon, filed a motion to quash the return, and a challenge to the array, on the ground of bias and prejudice on the part of the sheriff in summoning them. This motion was overruled, and the action of the court in this respect is assigned for error.

It does not appear, when the motion was heard, that any evidence was offered tending to show either bias or prejudice on the part of the officer charged with the execution of the *venire*; but we are asked, as the court below was, to find that such bias or prejudice existed on the part of the sheriff, from the simple fact that he had executed the *venire* by summoning the same forty men who had been previously discharged, on the sole ground that they had not been summoned by any person authorized by law. From the mere fact of summoning forty men who had been discharged for the reason that they had not been brought into court by any legally authorized person, we are not justified in presuming or inferring that his conduct was prompted by bias or prejudice against the accused, especially so in the face of the following admissions contained in the record: That "there was no objection made against any of said jurors, either by the prosecuting attorney or defendant, on the ground of their not being qualified." The defendant had accorded to him the full benefit of having had a jury summoned by a sworn officer, and the presumption is to be indulged that he discharged the duty imposed fairly and impartially till the contrary should be made to appear affirmatively. This not having been done, the court properly overruled the challenge to the array.

After the examination of the forty jurors, on their *voir dire*, and their acceptance as qualified jurors, the defendant

2. PEREMPTORY filed his motion asking the court to compel
CHALLENGES. the prosecuting attorney to exhibit his chal-
lenges, which the court refused.   This action of the court
is also assigned for error.   It has been held, in the *State v.
Steeley*, 65 Mo. 218, that, in criminal cases, the State must
announce its challenges before the defendant can be com-
pelled to make his.   It, however, appears from the record
that defendant had the full benefit of this principle, for it
recites " that the prosecuting attorney made his peremptory
challenges, exhibited them to defendant, and after that
defendant made his peremptory challenges."   All that the
rule requires is, that the State shall first make and exhibit
peremptory challenges to defendant, and it clearly appears
that this was done.

It is also insisted that the court erred in giving the
first instruction on the part of the State, and refusing the
3. MURDER. first and second asked by defendant.   The
first instruction given for the State relates to murder in
the first degree, and informs the jury what they must believe
from the evidence before they can find defendant guilty of
murder in that degree.   It is not contended by counsel that
the instruction does not properly define the offense, but it
is insisted that there was no evidence in the case to sup-
port it.   In the light of the evidence this objection is not
well taken.   The evidence on the part of the State shows
that the difficulty which resulted in the death of deceased,
occurred at the house of defendant's father, where a dance
was going on; that deceased came to the dance between
ten and twelve o'clock, and took a place in a set which
was being formed; that defendant also took a place in the
same set, to which deceased objected, on the ground that
some other person was entitled to the place, whereupon
Antoine Degonia, a brother of defendant, and one of the
musicians, remarked to deceased not to " get his back up;"
that deceased replied that the place to fight was outside,
and went out of the door on one side of the house into the
yard, and Antoine went through the window on the other

side; that Antoine threw a rock at deceased, which struck him, as some of the witnesses state; that they then clinched and were engaged in a fight; and that defendant came out with a knife in his hand saying he would cut Polite, and with Frank Degonia, another brother, engaged in the fight, striking Polite several blows; that deceased broke away and ran and was pursued by defendant and his two brothers, and was struck in the back by defendant when crossing a fence; that defendant soon after returned with a knife in his hand, the blade of which was three or four inches long, and said " I got him Uncle Bill—I got him." " I gave him three d—d good licks," and " I struck him three licks that I counted." The body of deceased was found about thirty-five or forty yards from the house in an old mineral hole about two feet deep. It was also shown by Dr. Bell, (who was a physician and the coroner,) that he probed the wound in the back of deceased, that it was a mortal wound, and the person receiving it could not have lived five minutes. The evidence on the part of the defendant tended to show that deceased began the fight, assaulted Antoine with a knife, and attempted to cut defendant's mother and Mrs. Orr, an aunt of defendant; that he used profane and abusive language to the Degonias, saying, when he went out, that he would cut Antoine; that the conduct of deceased was violent and turbulent; that prior to the fight he had repeatedly threatened to kill defendant and his brothers: that the wound described by Dr. Bell was not necessarily fatal, and that his death may have been occasioned by his falling in the mineral hole. We think there was sufficient evidence to justify the court in giving the first instruction relating to murder in the first degree. This view disposes of the objection to the action of the court in refusing defendant's first instruction, which asked the court to tell the jury that there was no evidence on which they could find defendant guilty of murder in the first degree.

The second instruction, asked by defendant and re-

fused, was to the effect that the jury, in determining
4. INSTRUCTIONS.    whether the defendant had reasonable cause
to believe that deceased was about to inflict great bodily
harm upon him, might take into consideration the threats
of deceased, and his character as "a dangerous, violent,
vindictive, turbulent man." The refusal of this instruction
is also assigned for error. Had a single witness testified in
the case that the deceased had the character of being either a
dangerous, violent or vindictive man, the instruction should
have been given ; but as there was no evidence whatever
as to the character of deceased in these particulars, the
instruction was properly refused. There was evidence that
deceased had threatened defendant, and the jury were told
in another instruction that the threats proven should be
taken into consideration by them.

There is nothing in the objection that one Schonboour,
during the recess of the court, was in the room where the
5. VERDICT.    jury was kept by a deputy of the sheriff, in-
asmuch as it appears that nothing whatever was said in
relation to the cause being tried. Nor is there anything in
the objection that the officer having them in charge fur-
nished them with cigars. *State v. Upton*, 20 Mo. 397; *State
v. Carlisle*, 57 Mo. 102 ; *Collier v. State*, 20 Ark. 36; *State v.
Cucuel*, 2 Vroom. (N. J.) 249.

It is also alleged as error that the prosecuting attorney,
in his closing argument, commented on the fact that de-
6. IMPROPER · RE-    fendant had not called as witnesses his two
MARKS BY THE    brothers, who were indicted as accessories.
PROSECUTING AT-
TORNEY.    It does not appear that this conduct of the
prosecuting attorney was made a ground for a new trial in
the motion for new trial : but it does appear that the atten-
tion of the court being called to it, the attorney was promptly
rebuked by the court and commanded to keep within the
record. This under the principle announced in the case of
the *State v. Lee*, 66 Mo. 165, cured the error, if any.

We find, upon a careful examination of the instruc-
tions, that they fully and fairly declared the law governing

the case, as it has been repeatedly adjudged by this court; and, if the jury believed the witnesses who testified that Antoine Degonia threw a rock at deceased and brought on the fight, and that defendant left the house with a knife in his hand, such as was described, and, with another brother, took part in the combat, and that deceased being thus assailed, broke away and ran and was pursued by the three and mortally stabbed in the back by defendant, and that he made the remarks attributed to him on his return to the house after the pursuit, they could not well have returned any other verdict than they did. Judgment affirmed, in which all concur, except SHERWOOD, C. J., and HENRY, J.

AFFIRMED.

HENRY, J., DISSENTING.—I think that the court erred in overruling the defendant's objection to the panel of petit jurors summoned by the sheriff, after having allowed his challenge to the same panel because the persons who summoned them did not take the oath prescribed by law. Robinson and Relf, who selected and summoned them in the first instance, were not deputies or sworn officers. But if they had been, the law requires the sheriff and his deputies to be sworn in open court before any jury shall be impaneled, that in summoning jurors to be returned to the court, they, and each of them have used, and will use the utmost diligence to summon and return, as jurors, sober and judicious persons of good reputation, and qualified by the laws of this State to serve as jurors; and that they have not summoned, or returned, and will not summon or return any person who, in their judgment, will be influenced in determining any of the matters which shall come before him as a juror, by hatred, malice or ill-will, fear, favor or affection, or by any partiality whatever.

The objection in the first instance was, that this oath had not been taken by the persons who selected and summoned the jury. The objection was to the panel, not to those who selected it, and was made probably under an

apprehension that improper persons had purposely been selected. It was the right of the defendant to have the officer, or officers, who summoned the jury which was to try him for his life, to take the oath prescribed, as additional security to him against a trial of his cause by a jury composed of persons prejudiced against him. The oath is prescribed in order to secure a fair and impartial jury, but the object of requiring the oath may be entirely defeated if deputies, or other persons select the jury and have them in court, and when a challenge is made and allowed to the entire panel, the sheriff may select and summon the same persons. Men hostile to the accused may have been purposely selected, and the sheriff, ignorant of the facts, may honestly and consistently with his oath return the same panel already selected because inimical to the defendant. If this is to be allowed, the section of the act requiring the oath is a useless incumbrance, for it may be so easily evaded that it is of no practical importance whatever. The cause was fairly and properly tried in every other respect, but for the reasons above stated I think that the judgment should be reversed.

SHERWOOD, C. J.—I concur in this dissent.