Little Rock and Fort Smith Ry. Co. v. Cavenesse.

LITTLE ROCK AND FORT SMITH RY. CO. V. CAVENESSE.

1. RAILROADS: *Reciprocal duties of railroads and passengers.*
It is the duty of carriers of passengers to keep their stations and the approaches thereto in such condition that those who have occasion to use them for the purposes designed may do so with safety. It is also the duty of the carrier to provide safe and convenient means of entrance to and departure from their trains. And, on the other hand, it is the duty of the passenger to exercise ordinary care and prudence in taking care of himself and avoiding injury; and, although the carrier be guilty of negligence, still, if the passenger, by failing to exercise ordinary prudence, directly contributes to the injury, he cannot recover.

2. SAME: *Same.*
Passengers on railroads must occupy the premises provided for their use while waiting for trains; and in going to and from the depot, offices, platforms and trains, must use the ways and means provided for that purpose.

3 NEGLIGENCE: *Contributory, when no defense.*
Contributory negligence of the plaintiff is no defense for the defendant, when the direct cause of the injury complained of is the omission of the defendant, after becoming aware of the plaintiff's negligence, to use a proper degree of care to avoid the consequences thereof.

4. SAME: *Same. Burden of proof.*
The burden of proving contributory negligence is, as a general rule, on the defendant; but where the plaintiff proves it, it is sufficient without proof from the defendant.

APPEAL from *Pulaski* Circuit Court.
Hon. F. T. VAUGHAN, Judge.

*J. M. Moore,* for appellant.

*First*—On the general proposition as to the burden of proving contributory negligence there is a conflict in the authorities, and this court has recently held that it would follow the cases which hold that the burden is on the de-

fendant. But in a case like this, where the negligence of the plaintiff, or his intestate, is necessarily developed in prosecuting his case, we do not understand that the rule adopted by this court has ever been applied in any case.

In *R. R. Co. v. Whitacre, 35 Oh., St. 627*, the court held that the burden of proving contributory negligence was on the defendant, but *if the plaintiff's own testimony in support of his cause of action raises the presumption of contributory negligence, the burden rests upon him to remove that presumption.*

See, also, *72 Penn. St., 141; 33 N. J. Law, 438; 61 Ga., 429; 12 R. I, 447; 37 Vt., 501; 20 N. Y., 69; 41 Wisc., 105; 43 Wisc., 513; 21 Minn., 297; 2 Wharton Negl., secs. 425–6; Beach on Cont. Neg., p. 423; Sh. and Red., on Neg., secs. 43–45.*

This court, in the late case of *T. & St. L. Ry. Co. v. Orr, as Ad., 46 Ark , 193*, heretofore referred to, makes the same qualification of the rule as is made in the above cited cases. The court say: "If the plaintiff in any case of personal injury can show negligence upon the part of the defendant, *without at the same time disclosing the inherent weakness of his own case by reason of contributory negligence*, then such contributory negligence is matter of defense, in confession and avoidance, affirmative in its character, and the burden is upon the defendant to establish the defense by a preponderance of testimony, as in all other affirmative defenses of like nature." See, also, *76 Penn. St., 157; 34 Ark., 613.*

And so we contend in this case that, while the burden of proving contributory negligence was, in the first place, on the defendant, it was, upon the disclosure by plaintiff's evidence of the negligence of her intestate, shifted from the defendant to the plaintiff. The legal presumption in favor of diligence on his part having been overcome by plain-

tiff's own evidence, it then devolved upon her to explain and excuse her intestate's conduct.

*Second*—The fifth and sixth instructions asked by the defendant should have been given without the modifications made by the court.   If the facts hypothetically stated in these instructions were supported by the evidence, and there were no other facts in evidence to excuse or justify the conduct of the deceased, his negligence was a legal inference.   The law itself settled that it was not "a position that a prudent man should have stopped in," and the modification made by the court in these instructions was calculated to mislead the jury as to the legal effect upon the evidence.

Conceding that he sustained the relation of passenger and was entitled to all the rights and protection that the relation implies, he was under the corresponding duty of a passenger to avoid unnecessarily exposing himself to danger.   The duty of each was to observe a degree of care proportioned to the nature and extent of the danger.   A passenger at a depot cannot assume that the railroad company is an insurer of his life, and close his eyes to the peril necessarily incident to the exposure of his person on the track or in other dangerous situations.   He is under the same duty to avoid positions of known or obvious danger while at the station awaiting the train that he is after he gets upon the cars and begins his journey.   *46 Ark., 528; 36 Ark., 46; 95 U. S., 702; 3 Pa. St., 326–7.*

The relative rights and duties of the railway and the passenger are well summed up in the following extract from a careful and accurate text writer:

"Injuries frequently happen to passengers by being run over by other trains passing through stations, while taking or leaving their own train.   In cases of this kind it would seem that if the running arrangements of the road are such

that it is *necessary* to pass over a railroad track in order to take or leave a train, the passenger may rightfully expect protection against the running of trains at such a time, and may, therefore, properly relax that vigilance for his safety which is ordinarily demanded of one coming upon a railroad track. But, if the presence of the passenger on the track is not essential to his getting on or off the train, and he has neglected safe and convenient means provided by the company for this purpose, he is there at his peril." *Thompson on Carriers of Passengers, p. 268, par. 4; also, p. 233, par. 19.*

In an action by a passenger who was struck by an engine while in the act of crossing the track, in going from the office to the train upon which he was about to take passage, the court say: " The plaintiff could not recover unless he was himself using due care at the time he received the injury, even if the carelessness of the defendant occasioned it. And the burden of proof was on him to show that he used such care. This much is clearly settled." *Warren v. Ry. Co., 8 Allen, 230; Mayo v. Ry. Co., 104 Mass., 140; Wheelock v. Ry. Co., 105 ib., 206; 97 Mass., 278; 135 ib., 225; 38 N. Y, 442; 61 Iowa, 555.*

*Third*—The second instruction of plaintiff should not have been given. The question ought not to have been submitted to the jury, for there was no relevant testimony before them of any alleged defect in the platform. The evidence of Matthews was inadmissible.

*Fourth*—The verdict was not sustained by the evidence, and the jury were influenced by the statements made by the counsel for plaintiff. See *38 Mich., 13*, as to improper statements made by counsel.

*Sol F. Clark & Son* and *J. C. Barrow*, for appellee.

The obligation upon a railroad company to keep a look-

out upon the track, and which this court has often held rests upon the employes of a running train, is a thousand-fold stronger when running through a depot. *36 Ark., 371; 39 ib., 491; 36 ib., 31.*

Says Justice Cole, in *Johns, adm'r, v. Chicago & N. W. Ry., 5 N. W. Rep., 887:*

" It seems needless to remark that the operation of a railway over and along public streets, in a village òr city, is necessarily attended with great peril to human life and property, consequently the. utmost care should be exercised by the servants of the company to avoid injury." *Butler v. Mil. & St. Paul R. Co., 28 Wis., 487.*

It is not denied but admitted that Caveness was a passenger when he was killed, and the company was obligated to him by the duties due to a passenger. (See *Beach on Contributory Negligence, pp. 50 and 62.*) These duties were, that when such passenger was at the depot, attending to getting his ticket and checking his baggage, to run slow through the station—to stop and be flagged before crossing the Memphis railroad track, especially when a Memphis train was in sight ready to cross—to blow the whistle and ring the bell, and especially to keep a lookout upon the track in the depot. *2d Wood's Railroad Law, pages 1038, 1163, sec. 310; Gordon v. Grand St., etc., R. R. Co., 40 Barb. (N. Y.), 546; 2 Waite's Actions, etc., page 65; Warren v. Fitchburg R. R. Co., 8 Allen, 227.*

" While at the platform it was the company's duty to protect him." See *Wharton, 653, 821.*

To hold that the being on the track by a passenger, and not to see a train coming is negligence in law, rejecting all circumstances to excuse such a condition, is plainly to require of the passenger not ordinary but extraordinary prudence, such as is exercised only by the few and not the many. This is not the law and never has been. It only

Little Rock and Fort Smith Ry. Co. v. Cavenesse.

requires ordinary care on the part of a passenger under any circumstances, while it holds the carrier to extraordinary care under all circumstances. *2 Waite's Actions and Defenses, 64; 6 Waite's Actions and Defenses, 595; 2 Woods' Railway, sec. 301.*

The "golden rule" for determining negligence, under any and every circumstance, is to inquire "whether men of ordinary (not extraordinary) prudence would have done or omitted the same thing." Did plaintiff's decedent exercise ordinary care *under the circumstances*—not independent of the circumstances? *Beach on Cont. Neg., 7.*

In the case of *Morrison v. Erie R. R. Co., 56 N. Y., 32,* Judge Folger said:

"That the rule established, and as I think the true one, is, that all circumstances of each case must be considered in determining whether, in that case, there was contributory negligence or want of ordinary care, and that it is not sound *to select one prominent and important fact, which may occur in many cases, and to say that that fact being present, there must, as matter of law, have been contributory negligence.* The circumstances vary infinitely, and always affect, *and more or less control each other.* Each must be duly weighed and relatively considered before the weight to be given to it is known."

And see *Van Stimburg's case, 17 Mich., 99;* also, *17 Wall., 657; 40 Cal., 447; 61 Md., 53.*

So in the case of *Ireland v. Plank Road Co., 13 N. Y., 533:*

"*It by no means necessarily follows, because there is no conflict in the testimony, that the court is to decide the issue between the parties as a question of law.*"

And see *Jamison v. San Jose & Santa Clara R. R. Co., 55 Cal., 593;* Penn. R. R. Co. v. Burnett, 59 Pa. St., 263; T. & R. Ry. Co. v. Murphy, 46 Texas, 366; Quimby v. Ver-

*mont Cent. R. R. Co., 23 Vt., 387;* see, also, *23 Cent. Law, J., 347; 22 Wis., 675,* where it is said :

" That to require of the mass of mankind that extreme degree of care which only persons of extraordinary pru-dence possess, would be to require an impossibility. *It would be to deliver them up to be destroyed by the negligence, carelessness and recklessness of others without redress.*"

As to defects in the station, see *Chicago, etc., R. R. Co. v. Wilson, 36 Ill., 167; McDonald v. Chicago, etc., R. R. Co., 26 Iowa, 124; St. L., I. M. & S. Ry. v. Cantrell, 37 Ark., 519; Dobleck v. Sharp, 88 N. Y., 203; 2 Woods' Railway, 1163, sec. 310; Buffet v. Troy & Boston R. R. Co., 40 N. Y., 168; Carnman v. Eastern Counties Ry. Co., 4 H. and N., 781.*

" A passenger on a railway is justified in assuming that the company has, in the exercise of due care, so regulated its trains that the road will be free from interruption or obstruction when passenger trains stop at a depot or sta-tion to receive and discharge passengers." *Baltimore & Ohio R. R. Co. v. State, 12 Am. and Eng. R. R. Cas. (Md.), 149.*

And as to when contributory negligence is a question for the jury, see *Central Law Journal, Vol. 23, pages 348, 349 and cases cited; Barber v. Bassett et al., 29 N. W. Rep., 198, and note on page 200; L. R. & F. S. Ry. v. Aikens, 46 Ark.*

*Sam W. Williams* and *J. C. Barrow,* for appellee.

The authorities which we cite show that passengers at such places have a right to go to all parts of the grounds on reasonable business, at reasonable times, and in a reasonable way, and the company owes the duty to them of having and keeping all parts of its grounds safe, and this involves questions of fact. Negligence and contribu-

tory negligence are rarely pure questions of law, but mixed questions of law and fact: First—where the facts are conflicting; or second—where different minds may fairly differ, as to whether a given act is or is not negligence, even where the facts are uncontradicted. In either of these contingencies there is presented a question for the jury alone; and the appellate court will never reverse the case, unless it would in the first instance in effect, direct a verdict by direct instructions as far as compatible with our constitution; because of the contributory negligence of plaintiff as a matter of law.

This is well settled: *Salter v. Utica & Black River Railroad Co.*, *88 N. Y.*, *42*, which is a case in which the evidence of contributory negligence in plaintiff was much stronger than here, it was held to be a question for the jury. "The law will not hold it imprudent in a person to act upon the presumption that another, in his conduct, will act in accordance with the rights and duties of both." *Newsome v. The New York Central Railroad Co.*, *29 N. Y.*, *383*.

Contributory negligence is no defense when the injury might have been avoided by proper care. *18 Central Law Journal*, *439*, citing the case of *Warner v. Citizens Railroad Co.*, decided by the Supreme Court of Missouri, May 17, 1884: "The rule for determining the proximate cause of an accident is that it must be the natural and probable consequence of the negligence, such a consequence as might have been foreseen as likely to follow from the act." See *2 Cent. Rep.*, *70* ; *41 Ark.*, *382*.

As we have amply shown by authority negligence, like fraud, can rarely be predicated upon any one given state of facts, as a question of law. One of the common states of facts in which it has been held negligence, *per se*, is where a plaintiff goes upon a railroad track without

8–48

looking for a train. Yet in New York, in the case of *Richardson v. N. Y. Central R. R. Co., 45 N. Y. Rep., 846*, the court of appeals held that where the railroad was so constructed that one could not see, and the company had built a watch-house, so as to obstruct the view, the party injured was not guilty of contributory negligence in failing to alight from his vehicle, and step upon the track and look before driving upon it. That this negligence of the company, in so building its track, excused the want of the customary prudential foresight of plaintiff. So here the facts excused plaintiff's act—made it not imprudent in law.

What is negligence and what is not, must depend upon the facts and circumstances of each particular case, as we have already shown, but we will here cite further authorities upon this and the kindred questions: When negligence is a question for the jury: See *3 Western Reporter, 449*, decided this year. Railroad is liable for defective platform: *Turner v. Vicksburg R. R. Co., 2 C. L. J., 219*. It is neglect for a flagman to fail to warn: *21 C. L. J., 100; Peck v. Michigan Central, 23 Northwestern Reporter, 416*. Contributory negligence is a fact for the jury, under ordinary circumstances: *20 Cen. L. J., 214; Illinois Central R. R. v. Hoskain, 3 Western Reporter, 449*. While upon its premises the defendant was bound to protect Caveness from the trespasses and wrongs of strangers, much more its own employes. *97 N. Y., 494*.

It is to be determined from the circumstances of each case whether there is negligence or contributory negligence: *Johnson v. Hudson R. R., 20 N. Y., 65*. Before a case can be taken from the jury all contested facts and inferences from them must be held in favor of plaintiff: *Sheridan v. B. C. & N. R. Co., 36 N. Y., 39; Hurlbut v. New York Cen. R. R., 40 N. Y., 145*. *Voak v. Northern*

*Central Ry. Co.*, *75 N. Y.*, *320*, decides that one who, through his negligence, places another in peril, cannot complain if the latter does not exercise the best judgment in extricating himself: *3 Central Reporter*, *381*, *No. 8*, *July 22*, *1886*. The failure to ring the bell, or keep an outlook, made the case peculiarly one for the jury: *Greavy v. L. J. R. R. Co.*, *101 N. Y.*, *419*. Defective or improper construction of platform is negligence: *H. & St. J. R. R. Co. v. Edward Stafford*, *4 Western Reporter*, *790*, *Sept. 25*, *1886*.

The counsel complains that the court erred in refusing the ninth motion for instruction asked by him. To interpose no other objection, such an instruction, if given, would have excused the defendant, in a most flagrant case, from all duty of outlook; and to have given that instruction would have been to say to the railroad companies: You may blindfold your engineers when you go through towns or come to depots, so you cannot see; it will be safer to do it; then you run no risks, as you owe no duty to the people you have invited there on your business until you have seen them. A proposition so monstrous need but be stated to be refuted. This court has recognized the duty of outlook in the country, where even the life of a domestic animal is involved. *Memphis & Little Rock R. R. v. Sanders et al.*, *43 Ark.*, *227*; also, *R. R. v. Finley*, *37 Ark.*, *563*; *Railroad v. Jones*, *41 Ark.*, *160*; *same v. Holland*, *40 Ark.*, *338*. While as to country locations and trespassers on the track, the authorities are in some conflict on this. *1 Thompson on Negligence*, *448*, *449*; *Toledo R. R. Co. v. Harman*, *47 Ill.*, *298*; *Wharton on Negligence*, *secs. 387*, *388*. Yet there is no conflict as to the duty of watchfulness and care as to passengers and others rightfully in cars or on the grounds of the company. *Indianapolis & St. Louis R. R. v. Stout*, *53 Ind.*,

*143; Texas & Pacific v. Chapman, 57 Tex., 75; Kelley v. St. Paul, Minneapolis & Manitoba R. R., 29 Minn., 1; Farley v. C., R. I. & P. R. R. Co., 16 Iowa, 337; Brown v. New York Central Railroad Co., 32 N. Y., 597; Butler v. M. & St. P. R. R. Co., 28 Wis., 487; MacGovern v. 'N. Y. C. & H. R. R. Co., 67 N. Y., 417; French v. Talleson Branch R. R. Co., 116 Mass., 537; Railroad v. White, 5 (B. J. Lea) Tenn., 540.* It was held in the McGovern case, above cited, that the backing of a train so that those running it could not see, was, *per se,* negligence. Even if deceased had been a trespasser, defendant was bound to keep a reasonable outlook.

BATTLE, J. On the 2d day of November, 1883, in the town of Argenta, in this state, Jonathan H. Cavenesse was killed by the locomotive and cars of the Little Rock and Fort Smith Railway company. His adminstratrix brought this action against the railroad company to recover the damages suffered by reason of his death.

A terminus of the defendant's railroad is in Argenta. Its passenger platform, waiting-rooms and ticket office at this place are on the west side of its track, and its baggage platform is immediately opposite and on the east side. The passenger platform is spacious, twenty feet wide, and is on a level with the top of the rail. The baggage platform is three feet high, and three feet from the rail, so near that a car could not pass a man of the deceased's size standing between it and the railroad track. It is built on blocks and is open at the sides. There is an incline at the northwest and northeast corners of it for persons having business on it to go on or off. On the north of it the Memphis and Little Rock railroad crosses the defendant's track. Within the southeast angle formed by the crossing of these two roads is the baggage-platform of the defendant.

On the 2d of November, 1883, the deceased arrived at Argenta on his way to Fayetteville. He had with him a minor son. The son took a seat upon the baggage platform, while his father went to the ticket office for the purpose of purchasing tickets of defendant to Fort Smith for himself and son. He purchased the tickets and walked across the track to the baggage platform, and handed one to his son, and stopped between the baggage platform and defendant's track for the purpose of making a memorandum in his book. While standing here, with his back partly to the railroad, a train of defendant, consisting of an engine and a tender and a caboose and cattle car, came backing down from the north side of and acrosss the Memphis and Little Rock railroad in the direction of deceased. He started across the track, but finding the train very near him, backed up against the baggage platform for it to pass. He was struck in that condition and killed by the train. Many witnesses testified that the train stopped the usual time before crossing the Memphis and Little Rock railroad, and that the usual signals of its approach were given, while others testify to the reverse. All the employes on the train, except one, testified that they did not see him until after he was struck by the train. Witnesses differed as to the speed of the train at the time it struck him. Some testified it was running four or five miles an hour, and others from eight to twelve miles an hour.

Sherman Kirley testified in the trial that he was a brakeman on the train that killed the deceased; that the engine was turned frontward, and was pushing the caboose and cattle car, and was running about ten or twevle miles an hour when it crossed the Memphis track; that the engine blew the whistle before crossing, but did not stop; that the defendant was in the habit of sending men forward to flag its trains before crossing, but he did not know that

there was a man there for that purpose at this time; that he was standing in the cabcose door, about eight car lengths from Cavenesse, when he first saw him; that Cavenesse first tried to cross the track, but did not have time; that there was an employe on top of the train, but he (Kirley) did not know whether he saw Cavenesse or not; that he (Kirley) saw from Cavenesse's motion that he could not get out of the way; that he (Kirley) gave the signal to stop three times when about five car lengths from the deceased, but did not give the signal when he first saw him; that the engineer did not see the signal, but the fireman did; that the train did not check up; that Cavenesse was standing leaning against the baggage platform, talking to his son, who was sitting on the platform in front of him; that when Cavenesse saw the cars were going too fast for him to step cross the track he tried to dodge under the baggage platform, but could not, and then straightened himself and leaned against the platform, with his back to it; that the steps of the caboose struck him, threw him down, and the boxing of the trucks killed him; and that the train stopped after running about five car lengths after passing him.

A. G. Cavenesse testified as follows: "Am seventeen years old and son of deceased; was sitting on baggage platform, with legs hanging down. We were waiting for train. Deceased had bought tickets and came across track and handed one to me, then turned, with his back to me, and was making memorandum of money paid for tickets; back was partly to me and to the track. The train came rolling down pretty rapidly, about ten miles an hour. I hollowed to father, 'Look out.' He started to cross the track, but found the train was too close, and backed against platform. He was struck in that condition and killed. The train was within twenty or twenty-five feet when I first saw it. It was in fifteen feet of father when I called

his attention to it; when he looked it was in eight or ten feet of him. The cars were even with him when he got back to platform. He could not have crossed the track. Two cars passed by him. The steps of the caboose caught him and rolled him along the edge of platform, there not being room for his body to pass. When he got to end of platform he dropped, with right leg across the rail, and engine and tender passed over it. No bell was rung or whistle blown until after engine passed him about twenty-five yards. A brakeman was on the end car; he saw father and signaled to the engineer to stop. It would not have done any good to stop then; the cars were too close. The cars were in twenty feet when brakeman saw him, and he signaled and went to brakes. Train did not check up any. It was going too fast to have been stopped. Don't know how close platform was to train, but too close for train to pass a man of his size. He weighed about two hundred pounds; was very large. He could have been seen from the train about two hundred yards up the road. The platform was the one right at the crossing of the Memphis and Little Rock railroad, where baggage and passengers were put on and off both roads; good many people around, and good deal of noise—rattling of baggage, omnibusses, etc."

Sherman Kirley was allowed to testify, against the objection of defendant, that there had been strife between the employes of defendant and the Memphis and Little Rock Railroad company before Cavenesse was killed, and a collision had occurred on account of it.

F. T. Mathews testified that he erected platforms for a railroad in Louisville, and one at Texarkana for the Iron Mountain railroad, and that the space between these platforms and the edge of the widest cars was fourteen inches. The defendant objected to this evidence because it was ir-

relevant. The court overruled the objection, and defendant excepted.

Other witnesses testified, but it is unnecessary to state their testimony here.

The plaintiff asked the following instructions, which were given:

"2. It is a rule, as applicable to all cases of injury about stations, that railway companies are bound to keep in a safe condition all portions of their platforms and approaches thereto, to which the public do or would naturally resort; and all portions of their station grounds reasonably near to the platforms where passengers, or those who have purchased tickets with a view to take passage on their cars, would naturally or ordinarily be likely to go.

"3. That it is the duty of a railroad company, when backing trains through her depot grounds, where she has invited persons seeking passage on her trains, and others having proper business with the company, to use the utmost care and caution, and to keep a thorough lookout; and the running over such person by such train in such depot grounds in daylight, when such person may be easily seen, without seeing such person, is generally gross negligence on the part of the company."

The court gave the following instruction on its own motion:

"The plaintiff alleges that her intestate was killed by the negligent running of the defendant's train. The plaintiff asserts that defendant was guilty of 'negligence.' The defendant denies negligence, and claims that deceased's death was caused by his own contributory negligence. Negligence cannot be presumed, but must be proven by plaintiff, but if plaintiff has shown negligence on the part of defendant, and if defendant undertakes to be relieved by setting up 'contributory negligence' on the part of de-

ceased, then defendant must show this 'contributory negligence.' When there is mutual 'negligence,' and the negligence of each the proximate cause of the injury, no action is sustainable.

"In determining whether an act is the proximate cause of an injury the legal test is:

"Was the injury of such a character as might reasonably, under the circumstances, have been foreseen or expected, as the natural result of the act complained of?

"The jury are the sole judges of the facts, the weight of evidence and the credibility of witnesses. You should, if possible, reconcile any conflict in the evidence, but if you cannot do this then give credence to the witness or witnesses whom you believe most worthy of belief. When you find what the facts were, then apply the law as given you."

To the giving of each of said instructions defendant, at the time, excepted.

Defendant asked the following instructions:

"1. The jury cannot assume, from the fact of the killing of the deceased, that there was negligence on the part of the defendant. The burden of proving the facts alleged as negligence is on the plaintiff, and before you can find for the plaintiff it must appear from a preponderance of evidence that it was guilty of the alleged negligent acts.

"3. In considering the evidence greater weight should be given to affirmative evidence, by credible witnesses, of the ringing of a bell or the sounding of a whistle, than is given to the testimony of witnesses that they did not hear such signals, unless it is shown that they were listening for the signals, or that their attention was called to that circumstance.

"4. If the jury believe from the evidence that the train by which J. H. Cavenesse was killed, was moving at a

prudent rate of speed; that a signal of the approach of the train was given by the ringing of the bell or sounding of the whistle; that the engineer or fireman did not see him in time to have stopped the train and prevented the injury, or if they did see him that there was nothing in his appearance to indicate any inability to get out of the way of the train, they will find for the defendant.

"5. If they believe that the deceased stopped on or by the side of the track, and between it and the baggage platform, in the way of the train (*and in a position that a prudent man should not have stopped*), and that there was no obstruction for some distance in the direction from which the train was approaching to prevent him from seeing it; that the employes in charge of the train did not keep a proper lookout, or see him in time to have stopped the train or prevented the injury, then his death was caused by his contributory negligence, and the jury should find a verdict for the defendant, notwithstanding they may further believe from the evidence that the employes in charge of the train in question neglected to ring the bell or sound the whistle for the crossing, and that the train was running at too great a rate of speed.

"6. If they believe that the employes in charge of the train neglected to keep a proper lookout, and thereby failed to see the deceased, J. H. Cavenesse; that the train was running at an imprudent rate of speed, and there was a failure to ring the bell or sound the whistle at the crossing; that the deceased had stopped on or by the side of the track in the way of the train (*and at a place where, under the circumstances, a prudent man, having due regard for his safety, would not have stopped*); that the track was open and he could have seen the train approaching for some distance, and in time to have gotten off the track, then he was guilty of contributory negligence, and the defendant

is not liable, notwithstanding the negligence of his employes, and your verdict should be for the defendant.

"7. The law does not require railroad companies to station men at their depots for the purpose of keeping passengers off the tracks or warning them of the approach of trains, except it be at crowded depots in cities where there are numerous tracks.

"9. If the facts and circumstances in evidence in this cause show that the deceased, at the time of the killing, was in a dangerous position, and was where a prudent man would not have stopped under the circumstances, and that this fact directly contributed to his death, then the plaintiff will not be entitled to a verdict on account of any negligence on the part of defendant's employes, unless the employes in charge of the train saw the danger deceased was in in time to have prevented the accident, and neglected to use all efforts in their power to avert the danger."

The court gave the first, third and fourth instructions. It refused to give the ninth instruction. It modified the fifth and sixth instructions, by adding the portion of said instructions in italics. And to the refusal to give the ninth, and the modifications of the fifth and sixth instructions, the defendant excepted.

During the closing argument before the jury, one of the attorneys for plaintiff made the following statement to the jury :

" I was the attorney for the defendant at the time Cavenesse was killed, and had been for eleven years, and I went with Col. Hartman, at the time the superintendent of the road, and investigated the case and advised him, Col. Hartman, at the time, that it was the worst case to defend that had occurred on the road."

Here the court, on its own motion, admonished the attorney that such a statement was improper, was not evi-

dence, and told the jury that they should entirely disregard the same. Defendant's counsel also objected and excepted to the statement, whereupon plaintiff's attorney stated to the jury that his statement was not evidence, but was only made by way of argument, and that the jury would not consider it in any other light.

The jury returned a verdict in favor of plaintiff for five thousand dollars; and a judgment was rendered accordingly.

Defendant filed a motion for new trial, on the following grounds:

1. Error in giving the instructions asked by plaintiff.

2. Error in the instructions given by the court on its own motion.

3. In refusing the instructions asked by defendant, and in modifying defendant's instructions.

4. In refusing to exclude that part of Sherman Kirley's evidence objected to by defendant.

5. In admitting the evidence of F. T. Mathews as to the construction of the depot platform at Texarkana and on the V., M. & P. railway, in Louisiana.

6. Verdict contrary to law and evidence.

7. Verdict excessive.

8. By reason of the statement made by plaintiff's attorney in his argument to the jury.

This motion was overruled, and the defendant filed a bill of exceptions and appealed.

1. Reciprocal duties of railroads and passengers

It has been repeatedly held by this court, that "One who is injured by mere negligence of another cannot recover at law or equity any compensation for his injury, if he, by his own or his agent's ordinary negligence or willful wrong, contributed to produce the injury of which he complains, so that but for his concurring and co-operating fault, the injury would not have happened to him, except

where the direct cause of the injury is the omission of the other party, after becoming aware of the injured party's negligence, to use a proper degree of care to avoid the consequences of such negligence." *St. L., I. M. & S. Ry. Co. v. Freeman, 36 Ark., 41; Harvey v. Rose, 26 Ark., 3 ; Little Rock & Fort Smith Ry. Co. v. Parkhurst, 36 Ark. 377 ; Bauer v. St. L., I. M. & S. Ry. Co., 46 Ark., 388; St. L., I. M. & S. Ry. Co. v. Wilkerson, 46 Ark., 513.*

"One who, by his negligence, has brought an injury upon himself, cannot recover damages for it. Such is the rule of the civil and common law. A plaintiff in such cases is entitled to no relief. But where the defendant has been guilty of negligence, also, in the same connection, the result depends upon the facts. The question in such cases is: *First*—whether the damage was occasioned entirely by the negligence or improper conduct of the defendant; or, *Second*—whether the plaintiff himself so far contributed to the misfortune by his own negligence or want of ordinary care and caution, that but for such negligence or want of care and caution on his part the misfortune would not have happened. In the former case the plaintiff is entitled to recover. In the latter case he is not." *Railroad Co. v. Jones, 95 U. S., 439; Bauer v. St. L., I. M. & S. Ry. Co., supra.*

Carriers of passengers are liable for negligence, but are not insurers of the safety of their passengers, as they are of goods, at common law. They are required to exercise a great degree of care and diligence in taking care of their passengers. It is their duty to keep their stations, and the approaches thereto, in such condition that those who have occasion to use these premises for the purposes for which they are designated, may do so with safety. It is their duty to provide safe and convenient means of entrance to and departure from their trains. But while these duties

2. SAME:

rest upon the carrier it is the duty of the passenger to exercise ordinary care and prudence in taking care of himself and avoiding injury; and although the carrier be guilty of negligence, still, if the passenger by his own misconduct in failing to exercise ordinary prudence, directly contributes to the injury, he cannot recover. The duty of the carrier to keep its stations and approaches thereto in good condition and to provide safe and convenient means of entrance and departure, creates the reciprocal duty on the part of the passenger to occupy the premises provided for their use while waiting for trains, and in going to and from the carrier's depot, offices, platforms and trains, to use the ways and means provided for that purpose. *Gonzales v. N. Y. & H. R. R. Co., 50 How. Pr., 216; Mayo v. Boston & Maine Railroad, 104 Mass., 137; Wheelock v. Boston & Albany Railroad Co., 105 Mass., 203; Thompson on Carriers of Passengers, 233; Jeffersonville Ry. Co. v. Hendricks, 26 Ind., 228; Beach on Contributory Negligence, 155.*

In *Pennsylvania Railroad Co. v. Zebe, 33 Penn. St., 326,* Mr. Justice Thompson, in delivering the opinion of the court, said: " The law implies in the contract of carrying passengers by railroad companies, that they shall provide a safe and sufficient road and cars, competent and careful conductors and hands, and safe and convenient means of egress and ingress to and from the line of their road. There must be no negligence on their part. There is also on the part of the passenger an implied contract that he will and does 'assent to all the company's reasonable rules and regulations for entering, occupying and leaving their cars; and if injury befall him by reason of his disregard of regulations which are necessary to the conducting of the business, the company are not liable in damages, even though the negligence of their servants concurred with his own negligence in causing the mischief.' *Sullivan v.*

*The Philadelphia & Reading Railroad Company, 6 Casey, 234, per Woodward, J.* Here are reciprocal duties defined, resting upon principles most reasonable and of the clearest justice, and nothing but special circumstances, or the most pressing exigencies, which are not now foreseen, could justify a departure from them. Nothing of the kind marked the case in hand. But the court submitted the question to the jury, whether the parties in this case had not a right to leave the cars, either by the safe means provided by the company, or by a way not provided. The abstract question of their right to do so is one thing, and need not be disputed; but the liability of the company by reason of their doing so is quite another thing. The regulation of the company for leaving the cars by the platform was apparent from its existence, and having been placed there and used for the purpose. This was the usual egress from the train. Without proof of any necessity, coupled with the proposition of their right to leave the cars at either side, the jury were, by the instruction of the court, allowed to find on the opposite of the principle laid down in the case of *Sullivan v. The Philadelphia & Reading Railroad Company,* which declares that passengers are bound to conform to the regulations of the company on entering, occupying and leaving the cars. The duty being fixed by the relation of the parties to each other, the contract must be performed by both. A departure by either could be justified only by a paramount necessity. The question then for the jury should have been, first, as to the performance of the duty by the company in providing safe cars and safe means of egress from them; and, secondly, if this were so, was it the fault of the company that the injury occurred? and to establish this, more was necessary to be proven than that the plaintiff and the injured son voluntarily chose to depart from the

cars by an unusual way. There should have been proof of some existing necessity for their doing so, to excuse them from negligence and the consequences of it. Then, the question might have been left to the jury, as to the propriety of their violating the regulations of the company. A voluntary disregard of regulations providing for their safe exit by the platform was a disregard of their obligations to the company; and if this were so, the plaintiffs ought not to recover. We hold, on these principles, that the company's liability could not be fixed for the injury consequent on a choice of the passenger in disregard of the provisions made by them for his safety and convenience. It was, we think, error in the court to submit the question of the rights of the parties to leave the cars at either side, in the absence of the proof of a justifying necessity in doing so. It was not negligence on the part of the company that they did not by force or barriers prevent the parties from leaving at the wrong side. People are not to be treated like cattle; they are presumed to act reasonably in all given contingencies, and the company have no reason to expect anything else in this case."

In *Bancroft v. Boston & Worcester Railroad Co.*, *97 Mass.*, *275*, the facts were, that the plaintiff's intestate alighted from the defendant's car upon the platform at the usual stopping place. There were two parallel tracks at this station, lying in a deep cut. There were two stairways provided by the company, by which the highway above could be reached *without crossing the tracks*, but the most obvious way—which was neither of these—was to cross both tracks to a platform on the other side, and go up the stairs which were in full view upon that side. This was the customary mode of exit, and was a fact known to the defendants. The last time this passenger was at the station it was the only means of reaching the highway, and

he had no notice of any other way at this time. He walked to the rear of the train upon which he had come in, and which now began to move towards Boston, and crossed the track upon which the train was running. On coming up to the next track he could only see the track clear towards Boston, for a distance of eighty or one hundred feet, on account of a curve and bridges across the track. As he attempted to cross the second track, an outward-bound express train, going at the rate of forty feet a second, and giving no signal of warning, rushed upon him before he could get across the track. This train he saw when too late, and, throwing up his hands, made an ineffectual attempt to escape, but was fatally injured. The court held that the plaintiff was not in the exercise of due care. Chief Justice Bigelow, in delivering the opinion of the court, said: "The track of a railroad, over which frequent trains are passing, is a place of danger. A person who goes upon it unnecessarily, or without valid cause, voluntarily incurs a risk, for the consequences of which he cannot hold other persons responsible—certainly not without adequate proof that he took active measures of precaution to guard against accident."

But the contributory negligence of a plaintiff is no defense where the direct cause of the injury complained of is the omission of the defendant, after becoming aware of the injured party's negligence, to use a proper degree of care to avoid the consequences thereof. It was held by this court in *St. L., I. M. & S. Ry. Co. v. Wilkerson, supra,* that the railroad company was liable for damages caused by the killing of a trespasser on its track, because, by the use of a proper degree of care, after it discovered him drunk on its track and unable to get off, it could have avoided killing him and failed to do so.

3. CONTRIBUTORY NEGLIGENCE: When no defense.

9–48

**4. Burden of proof of contributory negligence.**  The burden of proving contributory negligence, as a general rule, is on the defendant.  This rule is founded on the presumption that a person is careful until the contrary appears.  It follows, then, that the reason of the rule ceases, and it can have no application when the plaintiff, by his own evidence, shows negligence on his part, and that such negligence aided or contributed to the injury received.  By such evidence he establishes a defense to his own action, as much as if the same facts were proved by the defendant.  *Shearman and Redfield on Negligence, secs. 43, 45.*

The second instruction asked by plaintiff, and given by the court, should not have been given.  There was no evidence that appellant had not kept in a safe condition all portions of its platforms and the approaches thereto. It was calculated to mislead the jury, by leading them to believe that appellant was liable for damages caused by the killing of Cavenesse, because its baggage platform was too near the railroad track, and that Cavenesse was not guilty of any negligence, under any state of facts, on account of being where he was at the time he was killed.

The ninth instruction asked for by appellant should have been given.  But appellant was not prejudiced by the refusal of the court to give it, because the substance of it was comprehended in instructions which were given.

The evidence objected to by appellant was clearly incompetent.

Appellant contends that the statement made by plaintiff's attorney, in his closing argument before the jury, was a good ground for a new trial, and the judgment of the court below should be reversed on account of it.  It has been frequently held to be the duty of *nisi prius* courts to grant new trials, both in civil and criminal cases, where counsel abuse their privileges by persisting in stating to

the jury facts which are not in evidence, or by making other statements in the way of argument, which are clearly unwarranted and prejudicial. *Brown v. Swineford, 44 Wis., 282; Coble v. Coble, 79 N. C., 589; Tucker v. Henniker, 41 N. H., 317; State v. Smith, 75 N. C., 306; Ferguson v. State, 49 Ind., 33.*

In *Brown v. Swineford, supra,* Chief Justice Ryan, in delivering the opinion of the court, said:

"The profession of the law is instituted for the administration of justice. The duties of the bench and bar differ in kind, not in purpose. The duty of both alike is to establish the truth and to apply the law to it. It is essential to the proper administration of justice, frail and uncertain at the best, that all that can be said for each party, in the determination of fact and law, should be heard. Forensic strife is but a method, and a mighty one, to ascertain the truth and the law governing the truth. It is the duty of counsel to make the most of the case which his client is able to give him, but counsel is out of his duty and his right, and outside of the principle and object of his profession, when he travels outside of his client's case and assumes to supply its deficiencies. Therefore is it that the nice sense of the profession regards with such distrust and aversion the testimony of a lawyer in favor of his client. It is the duty and right of counsel to indulge in all fair argument in favor of the right of his client; but he is outside of his duty and his right when he appeals to prejudice irrelevant to the case. Properly, prejudice has no more sanction at the bar than on the bench. But an advocate may make himself the *alter ego* of his client, and indulge in prejudice in his favor. He may even share his client's prejudice against his adversary, as far as they rest on the facts in his case. But he has neither duty nor right to appeal to prejudices, just or unjust, against his adver-

sary, *de hors* the very case he has to try. The very fullest freedom of speech, within the duty of his profession, should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof. It may sometimes be a very difficult and delicate duty to confine counsel to a legitimate course of argument. But, like other difficult and delicate duties, it must be performed by those upon whom the law imposes it. It is the duty of the circuit courts, in jury trials, to interfere in all proper cases of their own motion. This is due to truth and justice. And if counsel persevere in arguing upon pertinent facts not before the jury, or appealing to prejudices foreign to the case in evidence, exception may be taken by the other side, which may be good ground for a new trial, or for a reversal in this court."

But the court in this case having admonished the attorney that the statement made by him was improper, and told the jury that they should entirely disregard it, and the attorney himself having said to the jury that his statement was not evidence, but was only made by way of argument, and that they should not consider it in any other light, it is presumed that the mischief of the remark was counteracted, and that appellant was not prejudiced thereby. Under the circumstances it is no ground for reversal. *Goldman v. Wolf, 6 Mo. App., 490; State v. Degonia, 69 Mo., 485; Fry v. Bennett, 3 Bosw., 24.*

For the errors indicated the judgment of the court below is reversed, and the cause is remanded, with instruction to the court to grant appellant a new trial.