MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE *v.* BALL.

4-6128                                                145 S. W. 2d 716

Opinion delivered December 16, 1940.

*Henry Donham* and *Pat Mehaffy,* for appellant.

*John R. Wright,* for appellee.

GRIFFIN SMITH, C. J. By the appeal it is sought to reverse a judgment for $1,000 rendered in response to a jury's finding that the railroad company was negligent in maintaining an open cistern near its depot at Okolona and that appellee was injured when he fell into it.

The Okolona depot is 56 feet in length, with 18 feet of space between the building and railway. The cistern is near the northeast corner of the depot. A road from the east is utilized by those having business at the station. From the south side of this road to the cistern the distance is 13 feet. The cistern is between this road and the building. It is finished in concrete extending 12 to 16 inches above the ground. The opening is 24 inches in diameter and had formerly been protected by a wooden platform. A metal lid was provided, but was frequently removed by Negroes who utilized the water supply. There is no contention the lid had been in place during December 12, 1939, when the alleged injury occurred.

Appellee, a resident of Okolona, called at the station during the day to inquire in respect of transportation to Gurdon. He was told a train was scheduled to arrive at 2:10, but was late. Part of a signed statement made by appellee January 6, 1940, is printed in the footnote.[1]

As grounds for reversal it is urged (1) "that the plaintiff, by leaving the premises adapted for the transaction of business, became a mere licensee"; (2) that the verdict is contrary to physical facts; (3) that the act of a third person in removing the metal covering from the cistern was the proximate cause of appellee's injury, and (4) the court erred in refusing to grant a new trial on the ground of newly discovered evidence.

*First.*—While it is the duty of the carrier to keep its stations and the approaches in good condition to facilitate entrance and departure, the passenger owes a reciprocal duty to utilize the premises designed for that purpose. Such passenger must not unnecessarily stray from the building, platform, roadways or approaches obviously intended for his accommodation and then expect the carrier to respond in the event of injury or other misfortune occasioned by conditions without the bounds of the carrier's sphere of operations. *Little Rock & Fort Smith Railroad Company* v. *Cavenesse,* 48 Ark. 106, 2 S. W. 505.[2] What part of the premises or approaches is reasonably necessary to the passenger's movements after the relationship of passenger and carrier has been created is a question of fact, and varies with local conditions and customs.

In the instant case the waiting room was left unlocked. It was unlighted, but heated. The agent left at 5:30. Appellee testified he was not familiar with the premises, that the train did not arrive until after

[2] *Lindholm* v. *N. W. Pacific R. R. Co.,* 79 Cal. App. 34, 248 Pac. 1013; *Pryotely* v. *N. Y. C. and St. L. R. Co.,* 28 Fed. 2d 868; 20 R. C. L., § 59, pages 67-68; 22 R. C. L., pages 919-920; 1 Thompson on Negligence, § 990, page 908.

dark, and the platform was not illuminated. The cistern was not where a passenger would ordinarily be expected to be; but, conversely, it cannot be said that it was not on station grounds. Photographs show location of the cistern in relation to the building. We cannot say, as a matter of law, appellant was prudent in not anticipating passengers might walk around the end of the building; hence, the jury had a right to determine that even though appellant's purpose in not securely closing the cistern was occasioned by its willingness to allow Negroes who resided near the premises to use the water supply, there was a paramount duty to passengers, and this duty was violated.

It is next insisted that the verdict is contrary to physical facts. This will be discussed later.

*Third.*—Although some third person probably removed the iron lid, evidence is sufficient for the jury to have concluded that the depot agent knew of the practice of Negroes in leaving the cistern uncovered. Therefore, the plea is unavailing.

*Fourth.*—Attached to the supplementary motion for a new trial is the affidavit of Lucy Swink, a colored woman. Her statement was that "Claud Ball just went on and swung off in the well—he took his hands and swung off in the well; I saw him do it." After hearing of appellee's claimed injury, the Negress mentioned to a neighbor what she had seen, and the story was repeated. She claims to have been called upon by three men who said "this is white folks business." She was instructed to keep quiet. No summons directing her to appear at the trial was issued. She admits having told the depot agent what she says she saw; and just before trial she told her story to the claim agent and another railway employe.

There can be little doubt that appellant was in possession of the information before the trial, and the trial court properly held the evidence was not newly discovered.

It is insisted that it was physically impossible for appellee to have fallen in the cistern because of the ele-

■■■

vated position of the 24-inch aperture, a model of which, made to scale, was in evidence and is before this court.

We agree that such an eventuality is highly improbable. It is difficult to see how a full grown man of normal build could inadvertently accommodate himself to the situation. One witness testified he examined appellee after rescue. About eight inches of appellee's pants-legs were wet, and:—"I didn't notice his coat and shirt being wet."

A majority of the court is of the opinion that it was not physically impossible for appellee to have fallen in the cistern, and therefore it was for the jury to say whether he did, or did not.

Judgment affirmed.