ABRAM B. GUNDERMAN, Respondent, v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 14, 1894.

1. **Passenger Carriers:** DEPOTS AND PLATFORMS: DUTY AND CARE. Carriers of passengers are required to exercise a great degree of care in taking care of their passengers and to keep in a reasonably safe condition their platforms and approaches thereto to which their passengers do or would resort, as well as any part of their station grounds reasonably near the platform where passengers would naturally or ordinarily be likely to go.

2. ———: ———: ———: PASSENGERS' CARE. The passengers' reciprocal duty is while waiting for the arrival of the train to occupy the premises provided for them and to use the ways and means provided for going to and from the station platforms and trains.

.3. ———: ———: ———: ———. Where the carrier's freight and passenger business are conducted at the same depot, but from different platforms with different elevations which elevation distinctly marks the boundary between the two platforms, if the passenger goes upon the freight platform by mere passive acquiescence and without direct or implied invitation to do so, the carrier owes him no duty to keep said platform reasonably safe and he goes there at his own risk as he who enjoys the license is subject to its concomitant peril.

4. ———: LIABLE FOR CONDITION OF PREMISES: REASONABLE CARE. A carrier's liability in respect to the condition of its premises is neither greater nor less than that of any person who invites expressly or impliedly others to come on his premises for the purpose of business, and it is bound to exercise only reasonable care.

.5. ———: ARRANGEMENTS FOR PASSENGERS AND FREIGHT: DUTY OF PASSENGERS. Where the carrier has so arranged its depot as to provide a platform for its freight business, separate and apart from the one for the use of its passengers, which was visible and distinct as if a separate building, it is the duty of the passenger to occupy the places provided for his use; and if he fails to do so and is hurt by reason of leaving such places he can blame no one but himself.

·6. ———: CONTRIBUTORY NEGLIGENCE. Though the carrier may be required to keep its freight platforms when connected with its passenger depot reasonably safe for passengers, yet in this case, though the defendant was guilty of negligence in failing to keep its freight platform in such condition, under the facts in evidence, the plaintiff is held guilty of contributory negligence since he failed to pay attention to the obstructions which should have warned him of the pit into which he fell.

*Appeal from the Cooper Circuit Court.*—HON. D. W. SHACKLEFORD, Judge.

REVERSED.

*Jackson & Montgomery* for appellant.

(1) The defendant had the right to make and enforce reasonable rules and regulations for the transaction and

conducting of its business, which in its judgment might be necessary for the successful, convenient and safe conduct thereof. Hutchinson on Carriers, sec. 522; 1 Rorer on Railroads, 227; 1 Waterman on Corp., sec. 77, 245; Taylor on Corp., sec. 348; Pierce's Am. Railroad Law, 248; *Martindale v. Railroad*, 60 Mo. 508; *Com. v. Power*, 7 Metc. 596; Note to same case, 41 Am. Dec. 465; *Smith v. Chamberlain*, 17 S. E. Rep. 371. (2) In respect to the condition of its platform, the defendant's liability was the same as that of any person to another, who by invitation or inducement, expressed or implied, has come upon the premises for the transaction of business. Thompson's Carriers of Passengers, 104; Ray's Neg. of Imp. Duties, Carriers of Pass., 94; Hutchinson on Carriers, sec. 521; *Falls v. Railroad*, 31 Pac. Rep. 901; *Railroad v. Marion*, 104 Ind. 242; *Kelly v. Railroad*, 112 N. Y. 443. (3) The defendant had the right to arrange its stations, and set apart suitable places for the use of passengers, and it was the duty of passengers to occupy the places provided for their use while waiting for trains. *Railroad v. Coleman*, 28 Mich. 440; *Railroad v. Cavenesse*, 48 Ark. 106; s. c., 2 S. W. Rep. 505; *Graham v. Railroad*, 39 Fed. Rep. 596; *Sturgis v. Railroad*, 72 Mich. 619; s. c., 40 N. W. Rep. 914; *Zoebisch v. Tarbell*, 10 Allen, 385; *Comly v. Railroad*, Pa. St.; s. c., 12 Atl. Rep. 496; *Drake v. Railroad*, 20 Atl. Rep. 994; s. c., 137 Pa. St. 352; *Bancroft v. Railroad*, 97 Mass. 278; *Eckerd v. Railroad*, 70 Iowa, 353; s. c., 30 N. W. Rep. 615. (4) Under the above authorities the court erred in giving plaintiff's instructions and in refusing defendant's instructions 2 and 3. (5) For the same reasons the court erred in refusing to sustain the demurrer to the evidence at the close of plaintiff's evidence, and in refusing to give the peremptory instruction number 1, prayed by defendant.

*S. C. Major* and *Draffen & Williams* for respondent.

(1) The defendant is in duty bound to keep in reasonably safe condition all portions of its platform and approaches thereto, to which the public do or would naturally resort, as well as all portions of its station grounds reasonably near to the platform, where passengers, or those who have purchased tickets with a view to take passage on its cars, would naturally or ordinarily be likely to go. No rule or regulation as to the conduct of defendant's business would justify it in leaving in an unsafe and dangerous condition any part of its platform or station grounds, to which parties waiting for its trains would be likely to go. *Chance v. Railroad,* 10 Mo. App. 351, 357; *Moore v. Railroad,* 84 Mo. 481, 486; *McDonald v. Railroad,* 26 Iowa, 124; *Patten v. Railroad,* 32 Wis. 524; *Hulbert v. Railroad,* 40 N. Y. 145; *Railroad v. Odum,* 2 Am. and Eng. R. R. Cases 503; *Green v. Railroad,* 36 Fed. Rep. 66; Hutchinson on Carriers [2 Ed.], 516, 519; *Railroad v. Brown,* 14 S. W. Rep. 1034. No complaint is made in this case of any rule or regulation of the defendant as to the manner of transacting its freight and passenger business, and no such question is involved in this suit. The breach of duty for which the plaintiff sues is defendant's failure to keep in a reasonably safe condition a portion of its depot platform, where its passengers, waiting for its trains, were in the habit of going and to which they were accustomed to resort and where they would be likely to go. It was defendant's duty to keep all portions of its platform where its passengers would be likely to go, in a reasonably safe condition. *Chance v. Railroad, supra; Patten v. Railroad,* 32 Wis. 524; *Green v. Railroad,* 36 Fed. Rep. 66. (3) The demurrer to the evidence, and defendant's second and

third instructions, which amount in effect to the same thing, were properly refused. The fact that defendant provided a platform, which was safe and was sufficient to enable its passengers to get on and off its trains, would not excuse it for leaving another portion of its platform, where its passengers were in the habit of going and would be likely to go, in a dangerous condition. A similar point was made and overruled in *McDonald v. Railroad*, 26 Iowa, 124, page 130; *Green v. Railroad*, 36 Fed. Rep. 66; *Railroad v. Odum*, 2 Am. and Eng. R. R. Cases, 503.

SMITH, P. J.—This is an action grounded on the alleged negligence of the defendant. The petition alleged that the defendant, a railway corporation, was "the owner of and had possession and control of a certain building and appurtenances at Boonville, in this state, which building was then occupied and used by said defendant as a depot at that station, on the line of defendant's said railroad for the purpose of receiving and discharging passengers and freight; that as a part of said depot building was built a platform extending entirely around said building; that at about seven o'clock and thirty minutes, on the evening of the said thirteenth day of February, A. D. 1893, the plaintiff was lawfully in and about said depot for the purpose of taking passage over defendant's said railroad, and had purchased of defendant's agent at said station a ticket for said purpose; that prior to said evening defendant, by its servants, had taken up and removed the plank from a part of said platform around said depot, and excavated a deep and dangerous hole or pit, about ten feet in length and seven feet in depth, under the place from which the said plank had been removed, and suffered by defendant negligently and wrongfully on the evening of the said thirteenth day of February, A.

D. 1893, to remain open, exposed, unguarded and without any protection, signal or warning to travelers lawfully in and about said depot against accidents; that on the evening of the said thirteenth day of February, 1893, plaintiff was lawfully walking around the platform of said depot and wholly unaware of danger, was accidentally, and without fault or negligence on his part, precipitated into said hole, whereby, he received great bodily injuries," etc.

The answer was a general denial coupled with the plea of contributory negligence. There was a trial and judgment for plaintiff from which defendant appealed.

At the conclusion of the evidence the defendant asked, a peremptory instruction to the effect that under the evidence the verdict of the jury should be for it, which was by the court refused, and the action of the court in this regard constitutes the main error upon which the defendant rests its appeal. The determination of the question thus presented, imposes upon us the duty of exploring the evidence and assembling such actionable facts as it tends to prove.

By reference to the following plan of the depot and platform at the place where the injury happened, which was submitted by the defendant with its brief and about the correctness of which there seems to be no question, a proper understanding may be had of the full significance of the facts as we shall state them to be.

N

W

E

S

High Back Platform 10 ft. wide x 148 ft. long.　　　Hole where plaintiff fell.

High Platform 20ft. x 24ft.

| Closet |　| Closet |

Window

Door

Ladies' Room 20ft. x24ft.

*Lamp

Office 12ft. x 24ft.

Gents' Room 18ft. x 24ft.

*Lamp

Dotted line is the elevation of 2 feet.

Low Platform 12ft. wide x 24ft. long.

Telegraph Pole

Freight Room 60ft. x 24ft.

Electric Light

High Platform 20ft. x 24ft.

Front

| Main Track |

High Platform 20ft. x 24ft.

PLAN OF BOONVILLE DEPOT AND PLATFORM.

It appears that the freight and passenger business of defendant at the station in question was conducted in the same building, the north end being used for office and waiting rooms, and the south end for freight room. The main track of defendant's roadway was situate on the east side of the depot building and between it and the principal part of the city. On the west side were several tracks known as the "house track" used for freight business. On the east side of the said building is a platform nearly on a level with the track, which is twelve feet wide by two hundred and thirty-four feet long, extending beyond each end of the building, but further at the north than at the south end. The floor of the building is about two feet above the east platform, and there are three steps leading from it up to the doors entering into the two waiting rooms. There is also a platform on the north, west and south sides of the building which is on a level with the floor of the latter. On the west side it is ten feet wide by one hundred and forty-nine feet long, and at either end its width is twenty feet. It is elevated so as to be on a level with the floors of the freight cars while standing there on the "house track" for the purpose of receiving or discharging freight.

It will be seen that the east line of this elevated platform is the west line of the east platform, and that the elevation of the former is some two feet greater than that of the latter. On this line extending from the one elevation to the other is a perpendicular plank wall about two feet high as already stated. So that the west boundary of the east platform is the building and the elevated platform at each end of it. There were no steps from the lower platform to the higher. There was a door opening from each of the waiting rooms out upon the west platform, but this was usually kept closed in the winter and was sometimes left open

in summer for ventilation, but had never been used as a means of egress or ingress by passengers. The east platform was kept well lighted in the nighttime by an electric arc light, but there was no light on the west platform except that which shone through windows of the waiting rooms. It was not disputed but that the east platform used for passenger business was quite ample. It was admittedly sufficient, convenient and safe. It was shown that the elevated platform was constructed exclusively for the defendant's freight business at that station, and that such was the understanding of the plaintiff and the public generally at the time the former was injured.

The defendant, for the comfort of the traveling public, was putting in water-closets connecting with each of the waiting rooms with the doors on the west side already mentioned. In order to secure the outside pipes from freezing, a pit was dug under each in which to place the same. These pits were ten feet long, north and south, and five feet wide, east and west. They were twelve feet apart.

About half past seven on the evening plaintiff was hurt he went to defendant's depot and purchased a ticket for a train which would arrive fifteen minutes later. He deposited his "grip" in the waiting room and then concluded to take a stroll to get, as he expressed it, some fresh air. He went out upon the passenger platform and directed his steps towards the north end of it and from thence he crossed over and "went up not very far from the house track" and from there he got upon the freight platform and started to walk around the west side of the depot. It was quite dark around there. As he proceeded, according to his own testimony: "I run against no obstruction only the dirt. I knocked my foot against some dirt and I thought it was funny that they would throw dirt out on the

walk and I just raised my foot to step over it and *slipped* right into the hole."

Mr. Gault, a witness for plaintiff, testified that when defendant fell into the hole he went around there from the north end of the platform, and found a good deal of heavy timber all over that end of it through which he worked his way to the window of the waiting room when he run against some sewer pipes, as they fell down. The timber and sewer pipe was between the north end of the platform and the hole. The dirt was piled up between the hole and the west and north sides of the platform. There was a passway left next to the west edge of the platform.

Assuming the statement of the facts which we have made is substantially correct, then the question is, were they sufficient to entitle the plaintiff to a submission of the case to the jury, or do they show that he was injured by the negligence of the defendant without any fault of his? If the answer be aye, the judgment must be affirmed, if nay, reversed.

Carriers of passengers are liable for negligence but are not insurers of the safety of their passengers as they are of goods at common law. They are required to exercise a great degree of care and diligence in taking care of their passengers. It is their duty to keep in a reasonably safe condition their platforms and approaches thereto to which their passengers do or would naturally resort, as well as every part of their station grounds reasonably near to the platform where passengers or those who have purchased tickets with the view of taking passage on its cars would naturally or ordinarily be likely to go. *Chance v. Railroad*, 10 Mo. App. 351, 357; *Moore v. Railroad*, 84 Mo. 481, 486; *McDonald v. Railroad*, 26 Iowa, 124; *Patten v. Railroad*, 32 Wis. 524; *Hulbert v. Railroad*, 40 N. Y. 145; *Railroad v. Odum*, 2 Am. and Eng. Railroad Cases, 503; *Green*

*v. Railroad*, 36 Fed. Rep. 66; Hutchinson on Carriers, [2 Ed.], 516, 519; *Railroad v. Brown*, 14 S. W. Rep. 1034.

This duty however creates the reciprocal duty on such passenger or intended passenger, while waiting for the arrival of a train, to occupy the premises provided for them. And in going to and from the carrier's station, platforms and trains to use the ways and means provided for that purpose. *Railroad v. Cavenesse*, 48 Ark. 106; *Gonzales v. Railroad*, 50 How. Pr. 216; Beach on Contributory Neg., 155.

It is not denied but that the defendant's passenger platform and the approaches thereto were in every respect in a reasonably safe condition, nor that in this regard it had discharged the full measure of its duty to its passengers. But it is plaintiff's insistance that the defendant's freight platform, which was a place where passengers or those who have purchased tickets with a view to take passage on its trains would naturally and ordinarily be likely to resort, was not in such reasonably safe condition. We can no more reasonably and fairly infer that passengers or those intending to take passage on its trains would naturally and ordinarily be likely to leave its comfortable waiting rooms or its convenient passenger platform and resort to its freight platform on the opposite side of the depot from where they enter the trains, to there wait for their arrival, than we could that persons applying at the office of a public inn for lodging would resort to its kitchen, laundry or back yard to there wait until the landlord puts the room assigned to them in order for their reception. We are totally unable to find any fact or circumstance in the evidence that would justify any such inference.

If passengers or those intending to become passengers while waiting for the arrival of trains have been known, as the evidence tends to show, to go upon the

defendant's freight platform, yet, if they went there by the mere passive acquiescence of the defendant and without a direct or implied invitation or inducement to do so, then there was no duty or obligation on the part of the defendant to keep said platform in a reasonably safe condition as to them, for they must be held to have gone there at their own risk. The rule is that one who enjoys a license is subject to its concomitant peril. *Sweeny v. Railroad*, 10 Allen, 368; *Zoebisch v. Tarbell*, 10 Allen, 385.

A carrier's liability in respect to the condition of its premises is neither greater nor less than that of any person to another who by invitation or inducement, expressed or implied, has come upon his premises for the purpose of transacting business. As to a person entering a carrier's station for the purpose of becoming a passenger on one of its trains, it is bound to exercise only a reasonable degree of care for his protection. Thompson's Carriers of Passengers, 104; Ray's Neg. of Imp. Duties, Carriers of Passengers, 94; Hutchinson on Carriers, sec. 521*a*; *Falls v. Railroad*, 31 Pac. Rep. 901; *Railroad v. Marion*, 104 Ind. 242; *Kelly v. Railroad*, 112 N. Y. 443. The plaintiff knew the construction of the depot and its surroundings. He knew, too, that the west platform was used by defendant exclusively for defendant's freight business. It is true that this was a combination depot, but the plaintiff knew the defendant's rule appropriating its west platform to the exclusive use of its freight business.

There is no pretense that passengers, or those intending to be such, were invited, allured, or induced to resort to this platform while waiting for the arrival of the trains. On the contrary, defendant had provided on the east side of its depot where its passenger trains stopped, an ample, well lighted platform conveniently connected with comfortable waiting rooms for their

use. There was, therefore, no reason or excuse for passengers or those intending to become passengers, while waiting at the defendant's station for coming trains, to go upon its freight platform. Its elevation and the absence of steps leading up to it from the passenger platform was an implied notice to them not to venture on such platform. By the arrangement of this depot the defendant had provided a platform for its freight business separate and apart from the platform for the use of its passengers, which was as visible and distinct, the one from the other, as if defendant had arranged separate depot buildings for doing each of these kinds of business. The defendant had the right to make this arrangement, and it was the duty of passengers to occupy the places provided for their use while waiting for the trains, provided such places were suitable, which it is conceded was the case. *Railroad v. Coleman*, 28 Mich. 440; *Railroad v. Cavenesse*, 48 Ark. 106; s. c., 2 S. W. Rep. 505; *Graham v. Railroad*, 39 Fed. Rep. 596; *Sturgis v. Railroad*, 72 Mich. 619; s. c., 40 N. W. Rep. 914; *Zoebisch v. Tarbell*, 10 Allen, 385; *Comly v. Railroad*, — Pa. St. —; s. c., 12 Atl. Rep. 496; *Drake v. Railroad*, 20 Atl. Rep. 994; s. c., 137 Pa. St. 352; *Bancroft v. Railroad*, 97 Mass. 278; *Eckerd v. Railroad*, 70 Iowa, 353; s. c., 30 N. W. Rep. 615.

It follows from these observations that since the defendant's freight platform was a place where the law imposed upon it no duty to keep it reasonably safe for passengers who might venture upon it, that if the plaintiff, though an intended passenger, voluntarily went there that it was at his own risk, and that if he fell into the pit which defendant had there dug for the purpose of placing the sewer pipes of its water-closets, and was there hurt, he has no one to blame but himself. We are constrained to think that the plaintiff has failed to

show by evidence the essential facts which he alleged and which are necessary to entitle him to recover.

But suppose we are in error in this regard, and that the defendant at the time and place plaintiff was injured, was bound to exercise a reasonable degree of care for its protection as a passenger; still, since he wantonly left the comfortable waiting rooms and well lighted passenger platform of defendant and sauntered forth into the darkness and upon the defendant's freight platform and without there giving heed to the existing conditions, patent to his senses, and which were sufficient to have warned an ordinarily prudent man of the probable danger of proceeding further, he persisted in going forward until he fell into the pit, he was guilty of such contributory negligence as must preclude his recovery. The undisputed evidence was, that there was piled upon the platform between the pit and the north end of it, timbers, pieces of plank, sewer pipe, shingles and dirt over which the plaintiff must have walked before he fell into the pit. These impediments were sufficient to have served as a warning to any but the reckless and imprudent, of the probable danger to be apprehended in walking there. There was a pile of dirt on the west side of the pit, and if the plaintiff approached the latter from that side the former was, according to his own testimony, sufficient to invite inquiry by the ordinarily prudent person as to what it meant before going further. The plaintiff had left the place which he knew was provided by defendant for the use of its passengers and if he wished to return he had no right to ignore the existence of the safe and convenient approaches thereto and attempt to do so by walking around the defendant's depot building upon its unlighted freight platform where passengers were impliedly forbidden, by the physical conditions existing there, to go either by day or night. This was

Mercantile Co. v. Bettles.

the grossest kind of negligence on the part of plaintiff, without which he would not have been hurt, and which, upon principle, we think, must bar his recovery.

As we do not think that in any view of the case that may be taken the plaintiff is entitled to recover, it becomes unnecessary to say more in regard to the instructions than that the peremptory one requested by defendant should have been given.

The judgment will, therefore, be reversed. GILL, J., concurs. ELLISON, J., dissents. ·