LEWIS M. CHORN, Respondent, v. MISSOURI, KANAS & TEXAS RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, February 3, 1913.

1. **CARRIERS OF LIVE STOCK: Yards: Turntable: Pit.  C** shipped a carload of mules over a carrier's road to St. Louis to market.  There was a transfer point where the car would be put into a St. Louis train.  They arrived there late in the afternoon, when he learned the other train was late.  His car was set on a side track and he was informed by the conductor that the caboose in which he was to ride would not stop at the station but would have to be taken in the yards about where the car was.  He went to the station and made inquiry about the train and was informed from time to time of its getting later and later.  Finally near twelve o'clock at night he went with the crew which was to take the incoming train, to a restaurant which was used by the carrier as a shelter, some distance from the station proper, and there they waited until near one o'clock when the crew left to make up a train.  C followed them over a path across the railroad yards towards where the caboose was to be.  He presently fell into an unguarded turntable pit dug into the path, and was injured.  The carrier was held liable in damages.

2. ———: ———: ———: **Side Track: Caboose: Trespasser.** A carrier left a car of live stock on a side track in the railroad yards at a transfer point, in order that an incoming train might carry it on to destination. The shipper accompanied them and he was told by the conductor that the caboose in which he was to ride would not stop at the station, but would start from up in the yards. *Held,* that the shipper was not a trespasser in going along a path through the yards after night in order to reach the caboose.

3. ———: ———: ———: **Directions of Conductor: Shipper.** A shipper of live stock has a right to rely upon the directions of the conductor as to where the caboose in which he is to ride will start from.

4. ———: ———: **Stock Pass: Statute: Conditions.** The statute requires carriers to give shippers of live stock a pass that they may accompany it, on condition that the shipper cares for the stock and releases the carrier from such care. The carrier has no right to impose any other conditions on the shipper by reservations written or printed in the pass, and such reservations are without force.

5. ———: ———: ———: **Negligence: Contributory Negligence: Contract.** A shipper is always held to responsibility for his contributory negligence, and a carrier will not be permitted to contract against his own negligence.

Appeal from Cooper Circuit Court.—*Hon. John M. Williams,* Judge.

AFFIRMED.

*W. G. & G. T. Pendleton* and *Lee W. Hagerman* for appellant.

*S. C. Major* and *Roy D. Williams* for respondent.

ELLISON, P. J.—Plaintiff's action is for damages on account of personal injuries received, as he alleges, by reason of defendant's negligence. He recovered judgment in the circuit court.

In the month of December plaintiff shipped a lot of mules on defendant's road from Fayette to St. Louis, Missouri. An acquaintance named Davis

shipped mules on the same train. The train, or at least the cars in which the mules were, were to become a part of a St. Louis freight train at a station called New Franklin, not far from Fayette, the starting point. They arrived at New Franklin about four o'clock in the afternoon, where they were put on a side track to await the St. Louis train. The point where the cars with the mules stood, was about half way between the New Franklin station house and defendant's turntable where plaintiff was hurt, the distance between the turntable and the station being about one mile. On arriving at New Franklin the conductor told plaintiff he should ascertain from the station agent or yard master when the St. Louis train would come in, saying to him: "You will have to catch the caboose down this way. If you wait at New Franklin you cannot catch it there." After assisting a mule, which had hurt his foot, in the car door, plaintiff and Davis went down to the station to ascertain from the agent when the St. Louis train would come in. They were told by him that he could not say until later. They then had supper and returned to the agent, who said their train would not get in until about ten o'clock. Later he informed them it would not come in until after eleven and a little later said it would be after twelve o'clock. Plaintiff and Davis then thought they would walk back to the car to see how the injured mule was getting along. They saw a switch engine and the crew which was to take charge of the incoming train when it arrived, start towards that part of the yards where their caboose would most likely be placed, and they followed to a restaurant at what is known as Franklin shops and which is used as a shelter and depot for train crews and passengers who may be at that place. Here the crew, Davis and plaintiff waited for nearly an hour, when, at about one o'clock the crew left, stating they were going to make up a train. They went in the

direction of plaintiff's mules and where the caboose was afterwards placed, it being the direction the conductor had said he would catch the caboose. Plaintiff, without a lantern followed along the same path, which was about seven feet wide. The pit of a turntable had been dug three feet into this path and several feet deep. It was unlighted and there were no guard rails, so that plaintiff, having no knowledge of the danger, fell into it and was injured. He had known of the turntable, but had never examined it. It was shown by several stock shippers that they had always been told to get into the caboose at about the point plaintiff was directed; and it further appeared that plaintiff was informed that the caboose would not stop at the station and he therefore could not get into it at that point.

There is considerable said by the parties as to distances and directions from one to another of the many points which were gone over in the testimony. At this stage of the case these things are of no particular importance. The substantial matter is, that defendant's arrangement of things at its yards at this transfer point for St. Louis live stock freight, which is always accompanied by persons in charge, is such that in order to take the caboose in which these persons must ride, it is necessary to go over or through the yards. In this instance the St. Louis train which was to convey the stock to St. Louis was many hours late. This naturally caused plaintiff and his companion to leave the car and go to the station. They could not of course be expected to stand out through a winter night by the car of mules. It was natural that the plaintiff should ask questions of the defendant's agent as to the time the incoming train would arrive, and to repeat these questions when the prior answers developed to be incorrect. The fact that the caboose was not to be stopped at the station as a passenger car should be, made it necessary that the

yards should be passed over to get into it at the distant point it was placed. There is no good reason for designating plaintiff as a trespasser. He was invited onto defendant's premises to transact business of profit to it, and it was its duty to use reasonable care to assure the reasonable safety of those premises. [2 White's Personal Injuries on Railroads, secs. 567, 630; Hollis v. Merchants Ass'n, 205 Mo. 508, 520, 521; Glaser v. Rothschild, 221 Mo. 180, 185, 186, 192-194; Carr v. Railway Co., 195 Mo. 214, 226.]

Plaintiff was justified in relying on the statements and directions of the conductor and agent as to where the caboose would be and that it could not be taken at the station. [Griffith v. Mo. Pac. Ry. Co., 98 Mo. 168; Nurse v. Railway Co., 61 Mo. App. 67; Gunderman v. Railway Co., 58 Mo. App. 370; Chase v. Railway Co., 134 Mo. App. 655; Albin v. Railway Co., 103 Mo. App. l. c. 317.]

Defendant sought to escape liability by pleading in its answer that plaintiff was travelling on a "stock pass" and that it had provided certain rules and regulations of the conduct of such passengers, which were named in the pass, who if they accepted the pass did so on condition of observation of these rules. This part of the answer was stricken out and we think properly. The statute (Sec. 3122, R. S. 1909) compels a carrier of live stock to furnish the shipper with a pass and prescribes the consideration for such pass shall be that the shipper give the stock necessary care and attention and release the carrier from liability for lack of such attention. The shipper is not required to enter into additional obligations and conditions, and any reservation of such in the pass is without force. Certainly the shipper would be chargeable with any negligence in want of proper precautions and conduct which might contribute to his injury; and all such character of defense was left in the answer. It did not need the aid of

a provision, or reservation, in a stock pass in order to be available. Defendant was properly required to stand on the two questions: Its own negligence and plaintiff's contributory negligence, if any; it being always understood that the carrier cannot make a valid stipulation against his own negligence. [2 White's Personal Injuries on Railroads, sec. 856; Carroll v. Mo. Pac. Ry. Co., 88 Mo. 239.]

The instructions are without fault. Those for the defendant were clear and liberal. Together, the jury was fully and clearly informed as to the issues and the rights of either party.

Instruction D, offered by defendant, was properly refused. All that was proper in it was included in B, which was given.

We are satisfied no ground for our interference exists and hence affirm the judgment. All concur.