THE CENTRAL RAILROAD AND BANKING COMPANY, plaintiff in error, vs. THEODORE J. PERRY, defendant in error.

| | |
|---|---|
| 58 | 461 |
| 109 | 795 |
| 58 | 461 |
| 116 | 745 |
| 58 | 461 |
| 125 | 518 |

(JACKSON, Judge, having been of counsel, did not preside in this case.)

1. Certificate to bill of exceptions need not be literally as in the Code; if the same in substance, it is sufficient.

2. One who has a railroad ticket and is present to take the train at the ordinary point of departure, is a passenger, though he has not entered the cars. In duties toward him, directly involving his safety, the company is bound to extraordinary diligence, and in those touching his convenience or accommodation, to ordinary diligence.

3. The rule of extraordinary diligence applies to the receiving, keeping, carrying, and discharging of passengers. It does not apply to precautions adopted to prevent them from being left, if they are unnecessarily late in taking their places after full and fair opportunity for doing so safely has been afforded.

4. In giving signals to tardy passengers who have needlessly neglected to board the train, the purpose is to prevent them from being left in consequence of their own want of promptitude. Ordinary diligence as to such signals, according to what is usual on like occasions, in like circumstances, is required on both sides—on the side of the company in giving them, and on the side of passengers in looking, listening, or observing. What kind of signals will come up to such ordinary diligence, by what means to be made, and with what degree of loudness or distinctness, are questions for the jury and not for the court.

5. Ordinarily, the place to board a train, and the sole place, is that provided by the company· for the purpose. Whether, under the circumstances, pursuit with the intention of boarding a moving train, could properly be undertaken at all, or could properly be continued until the injury was received, should be left for determination by the jury, in the light of all the evidence.

6. A depot and track used in common by two chartered railroad companies (in the city where their lines connect), though belonging to one of them exclusively, may be considered as belonging to each relatively to its own operations and business. Each must protect its own passengers from the other's negligence, so long as passengers are in their proper places, but not when they are out of place.

Practice in the Supreme Court. Certificate. Railroads. Diligence. Before Judge HILL. Bibb Superior Court. April Term, 1876.

Perry brought case against the Central Railroad and Banking Company for damages sustained by him, on the track of said company, through the negligence of its agents and employees.

The facts were, in brief, as follows:

On the 13th of October, 1874, plaintiff bought a ticket from defendant, at the city of Macon, by which it contracted to convey him to Savannah. He proposed going on the night freight accommodation train. This train was composed of about fourteen freight cars, a baggage car, with two or more passenger coaches in the rear. It was some two hundred yards in length from the engine to the rear end. The passenger coaches stood under the car-shed, with the rear end of the last coach near the ticket office. Before the train started, and after purchase of his ticket, plaintiff engaged in conversation with a friend on the floor of the car-shed, near the ticket office. The train, at its proper time, started out, without his observing either its motion or the signals given for departure. He started in pursuit of the train, running a portion of the way on the track. When he reached the lower end of the car-shed, and while in the gateway leading out of the same, he collided with the engine of the Macon and Augusta Rail-

road Company, coming into the car-shed over the track of the defendant. This engine, with the train thereto attached, had come on to this track at a switch outside of, and about twelve feet from, the car-shed. It waited at a point some fifty yards from the switch, as was its custom, until defendant's train pulled out and passed the switch; it then started into the car-shed to take its place, on the track of defendant, preparatory to its departure. It was in the execution of this movement that the collision occurred, in consequence of which plaintiff lost his leg, and for which injury this suit was brought. Plaintiff, in the excitement of the chase, blinded by passing from a lighted car-shed into darkness, rushed upon the pilot of the incoming engine without observing it until too late. This engine was moving at the rate of about three miles per hour.

The jury found for the plaintiff $5,000.00. The defendant moved for a new trial upon the following, among other grounds:

1st. Because the court erred in charging the jury "that when a passenger has bought his ticket, then the railroad selling the ticket enters immediately into a contract with the passenger.; that is, the relation of passenger immediately commences. If Perry, the plaintiff, bought a ticket, until the time of starting, he was a passenger, and it was its duty—that of the railroad company—to see that he was protected in his right as a passenger, as to giving signals and such other matters as I have stated, as much before starting of the train, as it was after starting."

2d. In charging as follows: "that it was the right of Perry to have the proper signals given by the railroad company before starting the train, so that they would be known to passengers going on the train; that is, such signals as passengers would take warning by and get on board of the train; that is, to such passengers who intended going on that train, but who had not got on the train."

3d. In charging that "the object of these signals was two-fold. One to warn passengers to get on the train, the other

to warn persons standing around to get out of the way, and it is as much the one as the other."

4th. In charging the jury, "if he, plaintiff, was a passenger waiting for these signals before the time of starting had arrived, he had a right to wait, and it was the company's duty to give them [the signals] to advise passengers that the hour for starting had arrived, and such who should fail to get on the train, in the absence of such signals being given, had a right to run after the train if there was a reasonable certainty of overtaking it. Now, these are such signals as extraordinary diligence requires it, the railroad company, to make; that is, such signals as would put the passenger on notice to take care of himself and get on the train."

5th. In charging the jury, "that ordinarily it is necessary for the whistle to blow or the engine bell to ring, and the conductor to say 'all aboard,' or something like that, but not to start in so short a time as not to allow passengers time to get on board. I say these two modes adopted and carried out in good faith, constitute sufficient diligence on the part of the officers of the road, but they must be sufficiently loud that the strange passengers could hear them, and know it was given from the engine of the train that was to carry them; these things must be done so they can hear the signals. It is not sufficient to blow the whistle or ring the bell, but it must blow loud enough to let the strange passengers hear them, and know that it was the engine to carry that train. That must be done in such a manner that he (the passenger) may know that it is his signal. They, the passengers, may or may not regard the signal, but it is proper for them to be given, in order that they, the passengers, may do so. Now, I will leave it for you to find whether these signals were complied with on the part of the company, in the way I have pointed out."

6th. Because the court erred in charging the jury that, "in order to understand this, you will have to examine the situation of the train. The plaintiff says that the train was composed of several cars, extending out beyond the depot.

He claims further, that it passed the switch to the left, some forty feet beyond the ice-house, making some seventy yards from the depot, and from there to where the plaintiff was standing would make an additional distance the length of the depot. He claims further, that this was night, with the headlight towards the river, and no person could see it with this train in the middle of the track, and that a man in the depot, from hearing the bell, could not tell whether it was a signal from the engine that was to carry this train of the company. Now, I say it (the railroad company) was bound to give these signals, so that the passengers could know that it (the train) was ready to go, and although given, if not given in such a way as to put the passenger on notice, the defendant was negligent."

7th. In charging as follows: " I charge you further, gentlemen, if these signals were not given; or, if given, were not given so he, the plaintiff, could hear them, or if he did hear them and could not know they were the signals of that train, then he had a right to follow the train (if there was any reasonable certainty of overtaking and getting on board) at the risk of the defendant. Understand me, gentlemen, in getting on board it would be at the risk of defendant, but if it gave the signals in the proper manner, then he followed at his own risk."

8th. In charging as follows: "if they, the employees of the company, failed to give the signals and the plaintiff was left, it was negligence on the part of the road, and he had a right to try and overtake it, the train, if he could reasonably do so, at its risk—that is, of the company—and if he gets hurt, it is at the risk of defendant. If, after giving the signals in such way as I have stated, by the train, the plaintiff had the right to get there at his own risk."

9th. In charging: "if a man comes to a train and finds it gone, it having started on schedule time, it is his fault; and if he attempt to follow and get on board, it is at his risk."

10th. In charging: "if you find the signals for starting

were not properly given, and believe from the evidence that plaintiff saw the track clear, and seeing no obstruction on the track immediately behind the departing train, he had a right to suppose the track clear, on the principle that two bodies cannot occupy the same space at the same time, and if the other train did get in and obstruct, by reason of another track at the switch, I say the passenger had no right to know—that is, he is not charged with knowing that the train was coming this way, thus obstructing the track coming in, and a passenger comes in contact with it without any knowledge of its being there, it is the fault of the Central Railroad, and the Central Railroad is responsible for that train."

11th. In charging as follows: "the Central Railroad has no right to have other trains on its track so soon after leaving as that passengers cannot overtake its train within a reasonable distance, and get on in safety when left by its omission to give signals."

12th. Because, after reading to the jury sections 3034 and 2972 of the Code, and charging as follows: "if you shall believe that the plaintiff, by ordinary care and diligence, could have avoided the accident to himself caused by neglect of defendant, he has no right to recover," the court erred in qualifying that principle as applicable to the facts of the case, by adding immediately thereafter, "I have told you that it was not in neglect of ordinary care and diligence for Perry to wait for the signal before getting on the train. I charge you, secondly, that it was not the want of ordinary care, if the proper signals were not given as I have charged, if he, in such case, followed down the track, if he had a reasonable certainty of overtaking the train; but if you find that there was some fault on his part, and carelessness in running down the track, then you may divide the damages as you see proper."

The motion was overruled, and the defendant excepted.

When this case was called, counsel for defendant moved to dismiss the writ of error because the certificate of the judge to the bill of exceptions was not in the precise form

prescribed by the statute. It stated that the bill of exceptions "is true, and contains everything necessary to a clear understanding of the errors complained of," instead of that the bill of exceptions "is true, and contains all the evidence material to a clear understanding of the errors complained of."

The motion was overruled, as will appear from the opinion.

R. F. LYON, for plaintiff in error.

J. & J. C. RUTHERFORD, for defendant.

BLECKLEY, Judge.

1. The judge's certificate to the bill of exceptions is sufficient when it is the same, in substance, as that laid down in the Code. It need not be in the same words. Thus, if instead of declaring that the bill of exceptions "is true, and contains all the evidence material to a clear understanding of the errors complained of," it declares that the bill of exceptions "is true, and contains everything necessary to a clear understanding of the errors complained of," it will be free from any valid objection. The motion to dismiss the writ of error is, therefore, denied—Code, §6.

2. When a person has purchased his ticket and arrived at the point of departure, though he has not entered the cars, he is a passenger, and while waiting for the train to set out, he is, as to all duties of the company towards him directly involving his safety, entitled to extraordinary diligence, and as to all duties involving merely his convenience or accommodation, to ordinary diligence.

3. If the carrier has used all proper diligence in providing a suitable place for passengers to enter the cars, and has given full and fair opportunity to enter the cars at that place, a passenger who has declined to enter until the last moment, is entitled only to usual and ordinary diligence in keeping him from being left. The rule of extraordinary

diligence applies only to the receiving, keeping, carrying and discharging of passengers. It does not apply to the precautions to be taken against leaving them if they are unnecessarily late in taking their places, after full and fair opportunity has been afforded them to do so. Such precautions are for the convenience or accommodation of passengers, rather than for their safety—Code, section 2067.

4. Relatively to passengers who have needlessly lingered about the depot and neglected to board the train, the object of giving signals is to keep them from being left. The company, in giving signals to them for that purpose, is bound only to usual and ordinary diligence; and such passengers are themselves bound to exercise ordinary care and attention in looking or listening for and observing the signals. Passengers who trust to signals to avoid being left, have a right to do so, but they are to be understood as trusting to such as are made in like circumstances, and on like occasions, in the exercise of ordinary diligence. What are such signals, and by what means they should be made, and with what degree of distinctness, or loudness, are questions for the jury, under the evidence, and not for the court.

5. It is for the jury to say whether the danger of pursuing and boarding a train, when in motion, was, under the circumstances, so apparent as to make it the duty of the passenger not to undertake it, or to desist from the attempt before he was injured. Ordinarily, a railroad company has a right to expect that passengers will get on and off at the places provided for them, and there only. It cannot be stated as a proposition of law, that it is a duty to keep the track clear for pursuers, or that a passenger has a right to chase a flying train. As a general rule, on the contrary, no such duty or right exists; and, for the sake of the public, as well as of the company, it is better they should not exist.

6. A railroad company which allows the trains of another chartered company to use its depot, and run over a short section of its track for approaching and leaving the depot, must protect its own passengers who are themselves not

out of place, against injury from the trains of such other company. But if a passenger, by reason of his own want of promptitude in boarding a train, be out of his proper place when so injured, the company, whose passenger he is, is not liable for any negligence which is exclusively the negligence of the other company. Both companies being chartered, the depot and track of either, when used in common at the point of connection, may be considered the depot and track of each, relatively to its own operations and business. The case is not like that in 49 *Ga.*, 355.

Judgment reversed.