## THE CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS RAILWAY COMPANY v. WADE.

[No. 2,105.    Filed November 2, 1897.]

CARRIERS.—*Passenger Train Containing Closed and Locked Cars.*— A railroad company may carry upon its passenger trains closed and locked cars, for private parties or for specific purposes in the reasonable and legitimate operation of its road, not to be used by the public generally, and such carrying is not negligence *per se.* *p. 357.*

SAME.—*Invitation to Persons to Become Passengers* —An invitation to persons to enter and become passengers is extended only when the train has been brought to a full stop at a station platform or other place which has been provided for the discharge and reception of passengers. *pp. 362, 363.*

SAME.— *Injury of Passenger Attempting to Board Locked Car.*— *Negligence.*—A passenger train containing five coaches pulled up at a station platform ten minutes before the schedule time for departure. Immediately in front of the platform stood the first and second coaches, the doors of which were open, and at the rear end of the first coach and at the front end of the second stood a brakeman ready to assist passengers to enter. These two coaches furnished ample accommodation for all passengers desiring to board the train at said station. The coach next to the rear stood about sixty feet from the platform, and was a vestibule car with its doors

closed and locked. The plaintiff, who had been at the station plat-
form some minutes before the train was scheduled to start, got
upon the front end of the vestibule car just as the train was start-
ing; finding the door locked plaintiff attempted to step to the rear
end of the coach immediately in front, and in doing so was thrown
to the ground and injured. *Held*, that it was not actionable negli-
gence on the part of the railroad company to have the doors of the
vestibule car closed and locked. *pp. 357–366.*

SAME.—*Duty of Passengers While Waiting for Train.*—Passengers
must occupy premises provided for their use and accommodation
while waiting for trains; and in going to and from stations, offices,
platforms, and trains, they must use the ways and means provided
for that purpose. *p. 365.*

From the Dearborn Circuit Court. *Reversed.*

*S. O. Bayless, J. T. Dye* and *Thompson & Colt,* for
appellant.

*W. R. Johnston* and *Russe & Russe,* for appellee.

WILEY, C. J.—Appellee sued appellant for injuries
alleged to have been received on account of the negli-
gence and carelessness of appellant's servants in the
running and operation of one of its trains. Trial by
jury; special verdict, and judgment for appellee.

The facts as averred in the complaint, and upon
which the appellee bases his right of action, are so un-
usual and out of the ordinary, that we deem it expe-
dient to state them fully in this opinion. The com-
plaint avers that the appellant was the owner and at
the time of the injury complained of, operating a rail-
road in and through Dearborn county, Indiana, and
that said railroad runs from Lawrenceburgh to Au-
rora; that on the 12th day of May, 1895, appellee pur-
chased a round-trip ticket of appellant's ticket agent
at Lawrenceburgh, to Aurora, which entitled him to
be carried from said city of Lawrenceburgh, to Aurora
and return; that for said ticket he paid twenty-five
cents; that he did go upon appellant's train to Au-
rora, and that the part of the ticket which entitled

him to ride on said train to Aurora was taken up; that on the same day he attempted to return from Aurora to Lawrenceburgh, on a passenger train, upon which he was entitled to ride by virtue of his ticket; that he went to the train at appellant's passenger depot, arriving there before the schedule time for the train to start; that said cars were "vestibule" cars, having doors at each side of the platform, and at the outer edge of the platform, so that when the doors were closed, the entire platforms are in, and no part thereof can be reached from the steps; that the appellant had carelessly and negligently left the vestibule door of said car closed and locked, of which fact the appellee was wholly ignorant, but supposed the same was unlocked and easily opened; that while he was waiting at said steps, the appellant, by its servants, before ringing any bell and without any signal or warning, started said train on its return trip to Lawrenceburgh, and appellee, as soon as said train started, immediately ascended the steps of the platform and attempted to open the vestibule door, so as to enter said car, when he discovered, for the first time, that said door was locked, and that he could not open the same; that there was not at the time any conductor or other employe of appellant within his sight or hearing whom he could call, or to whom he could make known his situation, and the train was then moving very slowly; he undertook to pass from the said steps on which he was standing, to the steps of the car immediately in front, the vestibule door of which was open; that he took hold of the hand-rail of said car in front, and had a firm and sufficient hold of the same, and had put his foot upon the step thereof and was passing over, when the engineer in charge of the engine drawing the train, carelessly and negligently caused said engine to suddenly move forward, so that the train was thereby

jerked forward suddenly and with great force and violence, thereby causing his feet to slip from the step, and causing him to lose his grasp of the hand-rail and to be thrown violently to the ground, beneath the train, whereby he was injured, etc. The complaint avers that the injuries received by him were without his fault or negligence. The sufficiency of the complaint was challenged by a demurrer, but was by the court overruled, and appellant excepted.

Upon the return of the special verdict, appellant moved the court for judgment in its favor thereon, which motion was overruled, and an exception was reserved. Appellant interposed its motion for a new trial, which was also overruled, but as the overruling of the motion is not assigned as error, no questions raised thereby are presented for determination.

The only error assigned by appellant is the overruling of its motion for judgment on the special verdict. The special verdict consists of 108 interrogatories and the answers thereto, and we are glad to say contains very little redundant or irrelevant matter. While it is highly proper for us to copy literally into the opinion some of the interrogatories and answers, embracing the more potent, controlling, and important facts, as to the general and less important ones, as we get them from the special verdict, we content ourselves by stating them as briefly as possible, in our own language.

The jury found that appellant, on May 12, 1895, maintained at Lawrenceburgh, Indiana, a passenger depot and station, and that an agent was in charge thereof, authorized to sell tickets; that on said day appellee was a passenger on one of appellant's trains from Lawrenceburgh to Aurora; that he purchased of appellant and had in his possession a ticket which entitled him to ride on one of its trains from Aurora to Lawrenceburgh; that on said day appellee attempted

to get on one of appellant's passenger trains to return to Lawrenceburgh; that he attempted to get on to a vestibule car, and that he was prevented from entering said car because the door thereof was locked. The jury further found that appellee did not know the door of said car was locked when he attempted to enter it; that at the time and place appellee attempted to enter the car, and found the door fastened, the train was moving; that when he so attempted to enter said car, he did not know that any car or cars in appellant's train were not intended for the reception of passengers; that the schedule time for the train to leave Aurora for Lawrenceburgh was 6 o'clock p. m.; that the lamps in the vestibule car which appellee attempted to enter were lighted the same as they were in the other cars; that appellant's employes backed its train across Hogan creek and passed west of its station at Aurora, so that its locomotive stood opposite the water tank, which was located near the west end of a passenger platform at said station; that after the locomotive had taken water, the train pulled east and stopped with the locomotive near the east line of Second street in Aurora; that said train consisted of a locomotive, tender, baggage car, and five coaches; that one of the coaches was vestibuled and was the second from the rear; that there was a passenger platform eighty feet long, along the main track, almost opposite the depot building; that after the train pulled up from the water tank, the smoking car and ladies' coach stood opposite and alongside of the passenger platform; that the other coaches on the rear of the train, while it was standing at the platform, stood west of the west end of the platform; that appellant had not provided any accommodation for passengers to alight from or get upon its trains at any point west of the west end of the platform; that after said loco-

motive took water, and after the train had pulled up
to the platform, it stood alongside the platform for
ten minutes or more; that while said train was stand-
ing along the platform the doors of the smoking car
and ladies' coach were open for the reception of pas-
sengers; that a number of passengers got upon the
cars standing along the platform, before the train
started to leave the station; that while the train was
so standing in front of the platform a brakeman on
appellant's train stood at the rear end of the smoking
car and the front end of the ladies' coach, for the pur-
pose of assisting passengers upon the train; that the
conductor who was in charge of the train stood at or
near the east end of the passenger platform, during
the time the train was standing there; that the con-
ductor, a short time before the train started, called in
a loud voice, "All aboard;" that said notice of the con-
ductor to get aboard was given loud enough to be
heard by all persons and passengers on the platform;
that soon after the conductor notified the passengers
to get aboard, he signaled the engineer to start the
train; that the engineer, before starting the train,
directed the fireman to ring the bell; that he began
ringing the bell before the train started, and rang it
continuously until the train reached the bridge across
Hogan creek; that persons on the platform and about
the platform and about the station heard and could
have heard the ringing of the bell a short time before,
and at the time the train started; that the train left
the station at Aurora at about 6 o'clock p. m.; that
all the passengers upon the platform had gotten on
the train at the time the conductor signaled the en-
gineer to start; that after the train pulled up to the
station platform, the end doors in the vestibule car
and the coach in the rear of it, were locked; that the
doors at the side of the end platforms on the vestibule

car were locked at the time the train was leaving the Aurora station; that the appellee arrived at Aurora about 3 o'clock p. m. on May 12, 1895; that before leaving Lawrenceburgh for Aurora, appellee had been drinking intoxicating liquors; that while appellee was in Aurora on said day he visited a number of saloons, and while there drank intoxicating liquors; that while upon the streets of Aurora on that occasion appellee was so intoxicated that he attracted the attention of persons who saw him; that while in Aurora, and before going to appellant's station, he was under the influence of intoxicating liquor; that when appellee was going to appellant's train, and a few minutes before the train started, he was so intoxicated as to cause him to stagger while walking; that appellee arrived at appellant's station ten minutes or more before the train left the station; that he arrived at the station in ample time to have gotten upon the train in one of the coaches, before the train started; that appellee got upon the steps of one of the coaches opposite the platform some time before the train started; that appellee, after falling from the steps of one of the coaches, passed along the train and went to a point west of the platform; that there were three steps on the vestibule car where the appellee got on; that these steps were about two feet long and seven or eight inches wide; that there was an iron railing or hand-hold at each side of the steps where the appellee got on; that an ordinary prudent and careful man could have sat on said steps and ridden with safety from Aurora to Lawrenceburgh; that when appellee fell from the train, his head and shoulders first struck the ground; that the appellee's left arm was crushed by the wheels of the cars passing over it, and that it had to be amputated; that he was also injured in his head when he fell; that the train left the station in

the usual and ordinary way; that there was an ascending grade in the track of appellant's railroad, where the train started to leave the station, and continuing east; that the coupling apparatus on the train was the Jenny coupler; that there was no slack in the train which caused cars to jerk when the train left the station; that the two coaches that were open for passengers had a seating capacity for forty passengers each; that there were from fifteen to twenty passengers when it left the station at Aurora; that appellee could have gotten on one of the coaches along the platform and obtained a seat therein before the train started.

We quote in full the following interrogatories and answers:

"15th.    If, on said 12th day of May, 1895, plaintiff attempted to enter a vestibule car in one of defendant's passenger trains for the purpose of being carried as a passenger to Lawrenceburgh, was he at the time he so attempted to enter said car exercising such reasonable care and prudence as persons of ordinary prudence would and do exercise under like circumstances?    Answer: Yes.

"18th.    If the plaintiff did at said time and place attempt to enter a vestibule car of defendant and found the vestibule door thereof could not be opened from the outside, and the train was moving when he discovered said door could not be opened, did the plaintiff entertain a well-grounded fear that to remain where he was, or to attempt to get off said train, he would be in danger of death or great bodily harm?    Answer: Yes.

"19th.    If on said 12th day of May, 1895, plaintiff did, at said city of Aurora, attempt to board a vestibule car in defendant's train, to be carried as a passen-

ger to Lawrenceburgh, and found the vestibule car could not be opened from the outside, did he attempt to go from the steps of said vestibule car to the steps of the car next in front of it for the purpose of getting into the last-named car?    Answer: Yes.

"20th.    If, at the time and place mentioned in the last preceding interrogatory, plaintiff attempted to go from the steps of defendant's vestibule car to the steps of the car next in front of it for the purpose of entering the last-named car, was he, at the time of so attempting to reach said last-named car, exercising such care, caution and prudence as reasonably prudent persons would and do exercise under like circumstances? Answer: Yes.

"23d.    If the plaintiff, on the 12th day of May, 1895, at the city of Aurora, attempted to board a vestibule car in defendant's passenger train at or about the schedule time for the starting of said train from Aurora to Lawrenceburgh, how far were the front steps of said vestibule car from the cinder platform at which the defendant company then received passengers?    Answer: Sixty feet.

"24th.    If, at the time and place mentioned in the last preceding interrogatory, the plaintiff had a return ticket entitling him to ride on defendant's passenger train from Aurora to Lawrenceburgh, and he then attempted to go from the steps of said vestibule car to the steps of the car next in front of it, and in such attempt he was thrown or fell to the ground and his left arm was then and there so injured by reason of falling or being thrown from said car as to necessitate amputation of same above the elbow joint, what amount of damages, if any, has the plaintiff sustained by reason of said injury?    Answer: Two thousand dollars.

"25th.    If, on said 12th day of May, 1895, the plain-

tiff received the injuries mentioned in the last preced-
ing interrogatory, and in the manner mentioned there-
in, would said injury have occurred if said vestibule
door could have been opened from the outside when
the plaintiff attempted to enter said vestibule car?
Answer: No.

"29th. Were not the facts and circumstances exist-
ing at the time the plaintiff attempted to board said
vestibule car (if he did attempt to board it) such as to
lead a reasonable person, having no knowledge to the
contrary, to believe that said car was at said time in-
tended by the defendant for the reception of passen-
gers? Answer: Yes."

The above interrogatories set out in full, were sub-
mitted to the jury by the appellee, while those that
follow were submitted by the appellant:

"34. Do you find from the evidence that the two
rear coaches on this train were brought from Cincin-
nati and attached to the rear of the train for the pur-
pose of being used for the reception of passengers at
Valley Junction and intermediate stations between
there and Cincinnati? Answer: Yes.

"35. Do you find from the evidence that the two
rear coaches on this train, including the vestibule
coach, were intended for the reception or carrying of
passengers from the city of Aurora? Answer: No.

"55. Do you find from the evidence that, after the
train started, the plaintiff attempted to leave the
steps of the vestibule car and get upon the steps of the
coach immediately in front of the vestibule car? An-
swer: Yes.

"56. Do you find from the evidence that the plain-
tiff fell from the train to the ground while attempting
to pass from the steps of the vestibule car to the steps
of the coach in front of the vestibule car? Answer:
Yes."

In his complaint, appellee has charged three distinct and separate acts of negligence on the part of the appellant.

(1.) Having closed and locked the doors of the vestibule car, at whose steps he was standing, waiting to enter.

(2.) In starting the train on its return trip without any signal or warning.

(3.) That after said train had started, and while appellee was attempting to pass from the steps of the rear car to the one immediately in front, the engineer carelessly and negligently caused the engine to suddenly move forward, so that the train was jerked with great force and violence, causing him to fall, etc.

As to the second and third acts of negligence charged, the jury found adversely to the appellee, and these being thus removed from the case, by such finding, there are but two questions for our consideration: (1) Was it actionable negligence on the part of the appellant to have the doors of the vestibule car closed and locked, and (2) was appellee guilty of negligence that resulted in or contributed to his injury? Should the first of these questions be determined adversely to appellee, it will render unnecessary the decision of the second question. We have no hesitancy in saying, as a question of law, that it is not negligence, *per se*, for a railroad company to have attached to its passenger train one or more vestibule cars, whose doors are closed and locked. We find no authority in the books in support of this proposition, but it is certainly sound in theory and principle. If this were not true, a railroad company would not have the right to draw private cars attached to one of its passenger trains, and yet we know from common knowledge and observation that it is constantly done. Where a private car is attached to a passenger train, and occupied by a

private party, the .traveling public have no right to enter it, and such party would be entitled to absolute privacy, if desired, by having the doors locked. Again, if a railroad was not permitted to carry passenger cars not intended for the general traveling public, it could not carry closed and locked cars, commonly known and designated as "dead cars," attached to one of its passenger trains, from one point to another, to be used upon special occasions, or at particular stations, such as excursions, etc., or to deliver such cars to some other line of road. We conclude, therefore, that a railroad company may carry upon its passenger trains closed and locked cars, for private parties or for specific purposes, in the reasonable and legitimate operation of its road, not to be used by the public generally, and that such carrying would not be negligence *per se.*

As to whether such act constitutes actionable negligence must depend upon the circumstances, conditions, and surroundings in each particular case. As to whether the facts averred in the complaint, and found by the jury, in the present case, constituted actionable negligence, we must look to the special verdict. From it we learn that appellant's train was scheduled to leave Aurora on its return trip to Lawrenceburgh, etc., at 6 o'clock p. m.; that at least ten minutes before leaving time, the train was pulled up in front of the station platform for the reception of passengers; that the train consisted of a locomotive, tender, baggage car, and five coaches; that the station platform is eighty feet long; that the smoking car and ladies' coach were immediately in front of the platform, with their doors open; that at the rear door of the smoking car and front end of the ladies' coach, a brakeman was standing on the platform, to assist passengers to enter; that the conductor was standing near the east end of the platform; that the two rear coaches were

standing west of the station platform; that their doors were closed and locked, and that they were not intended for the use of passengers at Aurora, but for their use at Valley Junction and intermediate points between there and Cincinnati; that the smoking car and ladies' coach would each accommodate forty passengers; that at Aurora, not more than twenty passengers took passage on the train, and that the lights were lit in all the passenger coaches; that appellant had not provided any accommodation for passengers to alight or get upon its trains at any point west of the west end of the passenger platform; that the vestibule car was sixty feet from the west end of the passenger platform, and west of the water tank; that the water tank was near the west end of the platform; that two of the coaches attached to the rear of the train were standing west of the platform, after the train pulled up to the station for the reception of passengers; that the vestibule car appellee attempted to enter was the second car from the rear; that appellee did not have any knowledge that any car in the train was not intended for the use of passengers at Aurora, or that the door was locked. Upon these material facts appellee contends that it was actionable negligence for appellant to have the doors of the vestibule car closed and locked, while the train was standing at the station for the reception of passengers, and the fact that the doors were locked, was the proximate cause of the injury.

If, under the facts charged, and found by the jury, such act of appellant in having the doors of the cars locked, was negligence, and such negligence was the proximate cause of the injury to the appellee, then his cause of action is well grounded, and the judgment in his favor must stand, unless it clearly appears that his own negligence contributed to his injury.

As to whether it was negligence in appellant in having the doors of the car locked, under all the circumstances, conditions, and surroundings, as they appear from the record, we must reach a conclusion wholly unguided by any adjudicated case that has come to our knowledge. The question itself in many respects is a pioneer one, for we find nothing like it in the books. It may be stated, as a plain and undisputed proposition, that railway companies that hold themselves out to the public as common carriers of passengers are required by law, and a high duty they owe the public, to construct, maintain, and keep in repair, at all stations or points where they stop their trains for the reception and discharge of passengers, convenient, suitable, and safe means therefor. We know from observation, experience, and common knowledge, that when such places are provided for the accommodation of passengers, they are called platforms. And so, when such platforms are provided, we have no hesitancy in saying that when a train of cars, for the carrying of passengers, is drawn up along the side and adjacent to such platform, it is the duty of one, who desires to take passage thereon, to enter such train by and through the means provided therefor. There is good reason for this rule, and yet we do not mean to say that a person would necessarily be negligent in entering a car from some other point. Such fact of negligence would depend largely upon special conditions and surroundings in each case.

Appellee contends that when a duly equipped passenger train of cars is placed upon a railroad track, under circumstances indicating that it is ready to receive passengers, and is about to proceed on its way for the transportation of passengers, an invitation to all suitable persons to enter the cars and to become passengers over its line is thereby implied, and in sup-

port of his contention he cites and relies upon *Citizens' Street R. W. Co.* v. *Twiname*, 111 Ind. 587. In that case appellee sued appellant for injuries received while she was a passenger on one of its street cars. She desired to take passage on one of its cars, and finding a Massachusetts avenue car, in the city of Indianapolis, standing on Illinois street, headed in the direction she wanted to go, she entered it; that soon after the car started, it came to a place where the servants of appellant were digging under and repairing the track, at which point the car was derailed, whereby she was injured. The car was again placed on the track, she entered it, at the invitation of those in charge of it, and after proceeding a short distance, it was again derailed, by reason of which she received additional injuries. There was some evidence tending to show that when appellee entered the car she must have known, or could easily have seen, that the track was torn up at the places where the car ran off. Under these facts the court held that the appellant was liable, on the ground that it held itself out as a common carrier, and that its car, standing on the track, properly equipped, etc., was an invitation for passengers to enter, and that appellant was accountable for injuries resulting from its negligence.

In the opinion, we find the following language: "When a duly equipped passenger train of cars is placed upon a railway track, under circumstances indicating that it is ready to receive passengers, and that it is about to proceed on its way for the transportation of passengers, an invitation to all suitable persons to enter the cars and to become passengers over its line is thereby implied. This doctrine is in principle well sustained by the authorities."

Following the above quotation, 1 Thompson, Neg. 307; *Nave* v. *Flack*, 90 Ind. 205, and *Terre Haute, etc.,*

*R. R. Co.* v. *Buck, Admx.*, 96 Ind. 346, are cited in support of the rule announced. The citation from Thompson, *supra*, is an exemplification of the doctrine that places in business houses and grounds are required to be kept in a reasonably safe condition, on the ground that the public are impliedly invited by the proprietor or tenant to trade or do business with them. The rule was clearly stated in *Carleton* v. *Franconia Iron, etc., Co.*, 99 Mass. 216, in the following language: "The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of." And it was upon this sound and wholesome rule of law that the case of *Nave* v. *Flack, supra*, was decided. In that case appellants were grain dealers, and were operating a warehouse, with scales, driveway, etc. The driveway was so dark that persons using it could not see its defects, and which was negligently kept in a dangerous condition, of which fact the appellee was ignorant. Appellee sold appellants a load of grain, and while delivering the same, and obeying their directions and instructions in passing over and through the driveway, and without any fault or negligence on his part, he was injured, and for such injury they were held liable. Elliott, J., in delivering the opinion of the court, said: "A man who invites others to deal with him, and provides a place where persons may deliver articles bought by him, is bound to use reasonable care to make and keep the approach to such place in a reasonably safe condition for use for the purposes for which it was intended. 1 Thomp. Neg. 307. A

dealer owes a duty to make reasonably safe all the approaches to his premises which are intended for use by his customers, and a breach of this duty will supply one who is injured, without his negligence contributing, with a cause of action. This duty is, however, owing only to those who go upon the premises by express or implied invitation, and does not extend to mere intruders."

These cases certainly announce the law, as applied to the facts therein stated. The learned judge who wrote the opinion in the *Citizens' Street R. W. Co.* v. *Twiname, supra,* in using the language we have quoted, used it with reference to the particular facts in that case, and the rule there announced was not intended as an abstract proposition of law, applicable alike to all classes and character of railways.

We know that railway trains running on the same track, but in opposite directions, must pass each other at switches or sidings; that when a train which carries passengers, properly managed by an engineer, fireman, conductor, brakeman, etc., is placed upon a sidetrack, that another train may pass upon the main track, or for any other legitimate purpose, in the operation of the road, it may truthfully be said that such train is duly equipped; that it is about to proceed upon its way, that it is ready to receive passengers, and yet such conditions and circumstances are not an invitation to "all suitable persons to enter the cars and become passengers, etc." Nor would it be an invitation to passengers to enter a duly equipped railway train, midway between two stations, should such train for any cause be required to stop there. We declare the law to be, both upon principle and by the adjudicated cases, that an invitation is only extended to persons to enter and become passengers upon a railway train, when such train has been brought to a full

stop at a station platform, or other place which has been provided and used for the discharge and reception of passengers. In the operation of street railways, there being no public statute directing where cars shall stop to receive and discharge passengers, their duties in such regard must be regulated by local or municipal laws, and whether cars being run thereon stop at the near or far side of the intersection of two streets, or elsewhere, wherever they do stop, and they are properly equipped under such circumstances which indicate they are ready to receive passengers, and that they are about to proceed on their way for the transportation of passengers, such conditions would evidently be an invitation to persons desiring to become passengers, to enter. And it was in this sense, and under these conditions that the language we have quoted was used in *Citizens' Street R. W. Co.* v. *Twiname, supra,* and not otherwise. Appellee further contends that there is no finding in the special verdict, that appellant was not in the habit of receiving passengers at the point where he attempted to enter the train, and relies upon this fact as an additional evidence of appellant's negligence in having the doors of the car locked. We do not think that the failure to make such finding can avail the appellee anything.

To support this contention appellee cites *Stoner* v. *Pennsylvania Co.*, 98 Ind. 384. That case and the one in hand are not in any sense analagous. The question decided in that case was that the court could not declare, as a matter of law, that it was negligence for appellant to get on the train at a place other than at the platform provided for that purpose. We are now considering the question of the negligence charged against appellant in having the doors of its cars locked, and not the negligence of the appellee.

The facts found by the jury fail to show any reason-

able excuse why any person intending to take passage on appellant's train, should leave the platform provided for that purpose, wander sixty feet from the west end of it, and beyond the water tank, where he was not observed by any servant of appellant, for the purpose of entering a car. The special verdict clearly shows that the platform provided by appellant was amply sufficient to accommodate all passengers at the time; that the cars in front of the platform, and where a servant of appellant was standing on the platform in front of the doors for the purpose of directing and assisting passengers, were more than sufficient to comfortably seat all passengers; and that the three coaches attached to the rear of the train, with the doors locked, and intended for the use of passengers at other stations, were standing west from the west end of the platform. It is further shown that appellee, some minutes before the scheduled time for the train to start, was on the platform where passengers were entering, and did enter the train, and that he in fact stepped upon the steps of one of the coaches opened for passengers, standing in front of the platform. The verdict further shows that at the place where the vestibule car was standing, and where appellee attempted to enter, appellant had not made any provision for the reception or discharge of passengers. It is not shown by the verdict that any of appellant's servants were at or near that part of the train west of the passenger platform to direct and assist passengers to enter, while it was shown that the vestibule doors and doors of the cars were closed and locked. The fact that the doors were closed must have been apparent to the appellee. By these facts, circumstances, and conditions, we are led to the reasonable and inevitable conclusion, that appellant did not, by implication or otherwise, invite appellee or other per-

sons to enter its train at that point.   If such facts, circumstances, and conditions constituted an invitation for appellee to enter the train, where he did enter it, it was an invitation to all passengers to enter there.   When a railway company has stopped its train in front of a passenger platform, and when its servants are on the platform, opposite or near the doors and platform of the cars, to assist passengers to alight and enter, and some of the cars attached to the train should be sixty feet or more from either end of the platform, where no provision has been made for the accommodation of passengers, and no one stationed to direct or assist passengers, it would be the height of folly, a mockery of reason, and a travesty upon the law, to say that the company extended an invitation to all persons desiring passage on the train, to enter its cars at such places.   And yet this is just what appellee is contending for here.   Such a rule would be harsh, unreasonable, and without merit.   Passengers must occupy premises provided for their use and accommodation while waiting for trains; and in going to and from stations, offices, platforms, and trains, they must use the ways and means provided for that purpose.   This doctrine has been expressly declared in Arkansas, Pennsylvania, and Massachusetts.   *Little Rock, etc., R. W. Co.* v. *Cavenesse,* 48 Ark. 106; *Bancroft* v. *Boston, etc., R. R. Corp.,* 97 Mass. 275.   Ordinarily the place to board a train of cars, and the sole place, is that provided by the railway company for that purpose.   *Central Railroad and Banking Co.* v. *Perry,* 58 Ga. 461.

A passenger platform at or near a railroad depot or station where passenger trains are scheduled to stop, and do stop, to receive and discharge passengers, is an indication and guide that that is the proper place provided by the railway company for all persons seek-

ing passage on its trains to enter. In saying this, we do not mean to say that it would be negligence *per se* for a passenger to enter a train at some other point, but in the discussion and consideration of this branch of the case in hand, the question of the negligence of the appellee is not material. In the case at bar, the jury made no finding as to whether or not the fact that the doors of the vestibule car were locked constituted negligence on the part of appellant, and the jury discharged its whole duty in this regard by finding and stating all the facts relative thereto. And hence, it becomes a question of law upon the facts found, for the court to say whether or not such facts constituted culpable and actionable negligence. For the reasons given, we have no hesitancy in saying and declaring as a matter of law, that the facts charged in the complaint and found and stated by the verdict, do not constitute such negligence. The jury having found adversely to the appellee as to two acts of negligence charged, and the court having determined from the facts found that the remaining act of negligence as charged in the complaint does not constitute actionable negligence, it follows that the appellee has failed to show any right of action for the injuries sustained.

The judgment is therefore reversed, with directions to the court below to sustain appellee's motion for judgment in favor of the appellant.

BLACK and COMSTOCK, JJ., concur in the conclusion reached.